UNION PAC. RY. CO. et al. v. COOK.

COOK v. UNION PAC. RY. CO. et al.

(Circuit Court of Appeals, Eighth Circuit. October 23, 1899.)

Nos. 1,197, 1,198.

1. DEEDS—CONSTRUCTION OF CONDITION.
    Plaintiff conveyed to the Union Pacific Railroad Company, then engaged in building its road, a city lot, on condition that the grantee should construct and maintain its "road through said tract," otherwise the lot to revert to the grantor. *Held*, that the word "road," as therein used, should be construed to mean not merely the track of the railroad, but the entire right of way, 200 feet in width, which the company was authorized by its charter to acquire and hold, and which was necessary for the construction and maintenance of its track; and that, the lot being within the limits of such right of way, there was no breach of the condition, although no part of the track was laid upon it.

2. SAME—FORFEITURE FOR CONDITION BROKEN—LIMITATION.
    According to the modern rule, the commencement of a suit in ejectment by a grantor after condition broken takes the place of a formal entry and demand of possession; and where a grantee, on condition subsequent, has

clearly manifested his intention not to perform the condition, so that his holding thereafter may be deemed to be adverse, the statute of limitations will run from that time against a suit by his grantor.

**3. SAME—ADVERSE POSSESSION OF GRANTEE.**

The possession of a grantee on a condition subsequent, although such condition is not performed within the time it should have been, cannot be considered adverse to his grantor so long as the land remains vacant, and the grantee has done nothing to indicate that he does not intend to some time comply with the condition.

**4. SAME—CONDITIONS—IMPOSSIBILITY OF PERFORMANCE.**

Where a lot, conveyed on condition that it should be used by the grantee for a specified purpose, was washed away or submerged by the action of a river, before the lapse of a reasonable time within which to comply with the condition, so as to render a compliance impossible, the title cannot be recovered by the grantor on the ground of a breach of the condition.

In Error to the Circuit Court of the United States for the District of Nebraska.

These are two writs of error, which were sued out respectively by the Union Pacific Railway Company and the Omaha & Grant Smelting Company, the defendants below, and by Ira Cook, the plaintiff below, to reverse the same judgment. The suit was in ejectment for the recovery of lot 3 in block 65, lot 1 in block 97, and lot 8 in block 96, all situated in the city of Omaha, Neb. The plaintiff below recovered the possession of lot 8, but failed to recover lots 1 and 3. Errors were accordingly assigned by both parties, and separate writs of error were brought. The case was tried below without a jury, and the following facts, in substance, were found specially by the trial judge: In June and November, 1865, Ira Cook, the plaintiff below, and his wife, Mary Cook, by two deeds, conveyed the three lots in controversy, for a valuable consideration, to the Union Pacific Railroad Company, which was then engaged in constructing its railroad from the city of Omaha to Ogden, in the territory of Utah. The habendum clause in each deed was as follows: "To have and to hold the same unto the said Railroad Company, their successors and assigns, forever: provided, in case said Railroad Company do not construct their road through said tract, or shall, after construction, permanently abandon the route through said tract of land, then the same shall revert to and become reinvested in the said grantor, heirs or assigns." Afterwards, but at a date not established, lot 1 in block 97 was washed away or submerged by the Missouri river, on the bank of which the lot was located. A great portion of lot 8 in block 96 was also washed away or submerged subsequent to the execution of the aforesaid deed, so that only a small part thereof now remains; but before it was washed away the railroad company had constructed, at a date not established, a switch track across the lot, which was washed away and abandoned before the commencement of the present action, and such part of the lot as was then above water was in the possession of the Omaha & Grant Smelting Company, one of the defendants below, hereafter termed the "Smelting Company," as lessee of the Railroad Company under a lease executed by the latter on April 23, 1886, for a term of 25 years, to expire in April, 1911. By a lease made by the Railroad Company on October 23, 1889, to the Smelting Company, it reserved to itself the right to lay a track across lot 8, which was demised by its previous lease, dated April 23, 1886; but it has never as yet availed itself of that privilege. So much of lot 8 as is now in existence is used by the Smelting Company for a roadway along the east side of its works, but no part thereof is covered by buildings or other structures. Actual possession of that part of lot 8 which is not submerged was taken by the Railroad Company in April, 1886, when it leased the same to the Smelting Company. The greater part of lot 3, in block 65, on the other hand, is within the right of way of the Railroad Company, treating that right of way as 200 feet in width; that is to say, the greater part of lot 3 is less than 100 feet distant from the center of the main track of the Railroad Company as originally constructed in the year 1865, and as it is still maintained, but no part of said track is laid on said lot. Certain switch tracks, however, connecting

with the main track, do cross lot 3, and are in use by the Railroad Company. Actual possession of lot 3 was not taken by the Railroad Company, except by constructing its track as aforesaid, until October 23, 1889, when it leased that lot, together with other property, to the Smelting Company, and constructed a switch track across the same. Ira Cook has been a resident of Des Moines, Iowa, since he made the conveyances aforesaid, and he had no personal knowledge of the manner in' which the property conveyed had been employed, or the uses to which it had been put, until the year 1891. He brought the present suit on July 13, 1895, having served notice of forfeiture upon the Railroad Company and the Smelting Company on June 17, 1895.

W. R. Kelly, E. P. Smith, and John N. Baldwin, for the Union Pac. Ry. Co.

James G. Berryhill, George F. Henry, E. Wakeley, and Arthur C. Wakeley, for Ira Cook.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The right of Ira Cook, the plaintiff below, to recover lot 3 in block 65 depends altogether upon the contention that by a true construction of the conveyance of that lot to the Union Pacific Railroad Company in the month of November, 1865, the plaintiff intended that the land should revert to him unless the track of the railroad (meaning thereby the rails and ties) were actually laid on or through the lot in controversy. The claim is, in other words, that the word "road," as used in that clause of the deed which is above quoted, means simply the narrow strip of land on which the track is laid. We think, however, that such a construction of the deed would be unreasonable in view of the circumstances under which it was executed. When the deed was made, the Railroad Company was engaged in building its line from Omaha to Ogden. It was authorized by act of congress (13 Stat. 357, c. 216, § 3) to acquire a right of way 200 feet in width for the construction and operation of its road, and it needed a strip of land on each side of its track for ditches, and from which to obtain material for grading, as well as on which to lay its ties and rails. Besides, we cannot assume from the findings made by the trial court that at that time the laying of the ties and rails of the contemplated railroad on or through the lot in controversy would have been any more beneficial to the plaintiff than the extension of the right of way across the same, or that the plaintiff had any special motive in binding the Railroad Company to construct its track as distinguished from its right of way through the lot. The word "road," when applied to a railroad, is often used in a sense which comprehends not only the ground on which the ties and rails are laid, but the strip of ground on either side thereof extending to the limits of its authorized right of way, and we have no doubt that it was used in that sense in the present instance. Inasmuch, then, as the greater part of lot 3 is less than 100 feet from the center line of the main track of the Union Pacific Railroad Company, as originally constructed, and within the boundaries of its authorized right of way, we are of opinion that the case discloses no breach of the condition on which that lot was conveyed,

and that the judgment in favor of the defendant below, as to that lot, was properly rendered.

A more important question is whether the plaintiff below was entitled to recover lot 8 in block 96, or such portion thereof as is not now submerged. The Nebraska statute of limitations (Consol. St. Neb. 1891, § 4542) provides that:

"An action for the recovery of the title or possession of lands, tenements or hereditaments can only be brought within ten years after the cause of such action shall have accrued. This section shall be construed to apply also to mortgages."

In behalf of the defendant companies it is claimed that after the lapse of a reasonable time within which to comply with the condition on which lot 8 in block 96 was granted to the Union Pacific Railroad Company, the plaintiff below had a right to enter for condition broken; that a cause of action to recover the title and the possession then arose, and was barred by virtue of the aforesaid statute, because more than 10 years had elapsed after the expiration of a reasonable time to comply with the condition before the present suit was instituted. It is true, no doubt, that the grantor of an estate upon a condition subsequent is no longer bound to make a formal entry for breach of the condition, but may sue to recover the possession if the condition is not fulfilled within the time limited. According to the modern view, the commencement of a suit in ejectment by the grantor takes the place of a formal entry and demand of possession. Cowell v. Springs Co., 100 U. S. 55, 58, 25 L. Ed. 547; Ruch v. Rock Island, 97 U. S. 693, 697, 24 L. Ed. 1101; Austin v. Cambridgeport Parish, 21 Pick. 215, 224; Cornelius v. Ivins, 26 N. J. Law, 376, 386; Jackson v. Crysler, 1 Johns. Cas. 125; Tied. Real Prop. § 277; Hopk. Real Prop. p. 174. In a proper case, therefore, we perceive no reason why the Nebraska statute of limitations may not be invoked as a defense to an action brought by the grantor of an estate upon a condition subsequent to recover his title and possession for nonfulfillment of the condition. The statute is one of repose, and for that reason it should be construed liberally to effectuate its purpose. A proper case, however, for the application of the statute would be one where the grantee of land upon condition has clearly manifested his intention not to comply with the condition, and has done so for 10 years after the condition should have been fulfilled, so that his possession during that period may be said to have been adverse to the right of the grantor of the estate. If the land to which a condition subsequent applies remains vacant and unoccupied after the expiration of the period within which the condition on which it was granted should have been performed, we perceive no reason why such holding by the grantee should be deemed adverse to the grantor from whom he acquired the title. In such a case the grantee's holding is not essentially different from that of a lessee who remains in possession after the expiration of his term without the consent of his lessor. Such possession by a lessee is not adverse; he is a tenant at sufferance; and for like reasons the grantee of an estate upon a condition subsequent should not be regarded as holding adversely to his

grantor, even after a reasonable time has elapsed to comply with the condition, where the land remains vacant, and nothing has been done with it to prevent a future compliance with the condition, or to indicate that the grantee does not intend at some time to comply therewith. The fact that the grantor sees fit to allow his grantee something more than a reasonable period to satisfy the terms of the grant should not put the statute of limitations in operation against him until the grantee devotes the land to some use not consistent with, or not contemplated by, the grant, which indicates clearly that he does not intend to comply with the condition upon which it is held. The grantee of an estate upon condition holds generally in subordination to the right of the grantor to enter for condition broken. Tenure exists between them, and for that reason a mere constructive possession by the grantee such as accompanies the legal title ought not to be deemed a denial of the grantor's right to enter. Some act must be done by the grantee which is tantamount to a disavowal of his obligation to perform the condition. Such an act might consist in putting the land to a use other than that which was limited in the grant; but suffering it to remain vacant and unused for a period longer than is reasonably necessary to comply with the condition, where the limitation is to some specific use, cannot be regarded as a denial of the grantor's right to enter for condition broken, and therefore as sufficient cause to start the statute of limitations.

From the findings made by the trial judge it appears that the Union Pacific Railroad Company did not take possession of lot 8 in block 96 (otherwise than by constructing a switch track across the same, which was speedily washed away and abandoned) until April 23, 1886,—less than 10 years before this suit was instituted. At the latter date it leased so much of lot 8 as then remained above water to the Smelting Company, which made use of the lot from that time forward as an ordinary roadway. From the date of the grant of the lot for specified uses on June 19, 1865, until April 23, 1886, the lot appears to have been vacant and unoccupied. The railroad at most only had a constructive possession. At all events, no act was done or performed by the grantee which can be said to have clearly indicated that it did not intend to put the lot to the use for which it had been conveyed, but did intend to put it to other and inconsistent uses. In view of this finding it may be conceded that the statute of limitations began to run as against the grantor of the lot on April 23, 1886, when the lot in controversy was leased to a third party, and put to uses which were incompatible with the condition on which it was granted; but we are of opinion that the statute did not begin to run prior to the last-mentioned date, because the holding prior thereto was not adverse, and that the plaintiff was not barred of his right of action or entry when the present suit was instituted.

With respect to lot 1 in block 97, the trial court concluded that, because that lot was washed away before a reasonable period had elapsed within which to comply with the condition, and the grantee was thereby prevented by an act of God from complying with the

condition, no forfeiture of that lot took place. In that view of the law we fully concur. It is accordingly ordered that the judgment below be affirmed.

SANBORN, Circuit Judge. I concur in the views expressed in the foregoing opinion relative to the title to lots 1 and 3, and as to lot 8 I concur in the result, on the ground that the construction of the switch track on that lot by the Railroad Company evidenced an intention to comply with the condition in the deed, and the first evidence of an abandonment of that intention and of the use of the lot for a railroad disclosed by the findings is its lease to the Smelting Company on April 23, 1886, within ten years of the commencement of the action. But I do not assent to the proposition that a grantor may not, by laches and acquiescence, waive his right and bar his action to recover vacant and unoccupied land for a breach of a condition subsequent. If the condition subsequent is negative in its character, if it does not require the use or occupancy of the land granted, then I agree that acquiescence in its vacancy may not waive the condition. But where the condition subsequent expressly requires the occupancy and use of the premises by the grantee for a specified purpose within a reasonable time, as in the case at bar, then the mere vacancy for an unreasonable length of time is itself a breach of the condition, and gives rise to a right of action for the recovery of the land; and, if the grantor does not enforce the right or bring the action within the time limited by the statute of limitations for the commencement of such actions, no sound reason occurs to me why, upon general principles, his laches and the limitation of the statute are not alike fatal to him. "The strongest equity may be forfeited by laches or abandoned by acquiescence" (Swift v. Smith, 79 Fed. 709, 712, 25 C. C. A. 154, 158, 49 U. S. App. 181, 186; Peebles v. Reading, 8 Serg. & R. 484, 493; Great West Min. Co. v. Woodmas of Alston Min. Co., 14 Colo. 90, 95, 23 Pac. 908; Sullivan v. Railroad Co., 94 U. S. 806, 811, 24 L. Ed. 324); and it seems to me that a mere right to enforce a forfeiture, which is never favored in the law, may be forfeited or waived in the same way (1 Warv. Vend. p. 450, § 9; Ludlow v. Railroad Co., 12 Barb. 440, 445; Jones v. McLain [Tex. Civ. App.] 41 S. W. 714, 715; Kenner v. Contract Co., 9 Bush, 202; Coon v. Brickett, 2 N. H. 163, 165; 2 Washb. Real Prop. p. 20, § 18).