ABNER D. VALLEY *vs.* THE BOSTON & MAINE RAILROAD COMPANY.

Aroostook.   Opinion October 18, 1907.

*Accord and Satisfaction.   Settlements.   Written Receipts.   Mistake of Fact.   Fraud. Assurances of Adverse Party.   Evidence.   R. S., chapter 84, section 59.*

1. By R. S., chapter 84, section 59, which is an affirmation of the common law, no action shall be maintained upon a demand settled by a creditor in full discharge thereof by the receipt of money or other consideration however small. This rule applies to actions ex-delicto as well as to actions ex-contractu.

2. Before such settlement can be avoided as made under mistake of fact, the sum received must be returned or tendered back.

3. A written discharge of all claims for injuries to person or property signed by the claimant and given for money actually received therefor however small in amount, will not be set aside for fraud unless the fraud be proved by trustworthy evidence consistent with proven circumstances.

4. Where the claimant writes upon such written discharge with his own hand that he has read it, his uncorroborated testimony that he did not read it is not sufficient to warrant a finding to that effect.

5. That the claimant accepted the money and made the settlement because of the assurances of the other party that he had no cause of action does not vitiate the settlement. He was not justified in relying upon such assurances.

6. In the case at bar, the money received in settlement was not tendered back, and the frauds alleged were not proved.

On motion by defendant.   Sustained.

Action on the case to recover damages for personal injuries sustained by the plaintiff and caused by the alleged negligence of the defendant company. The accident in which the plaintiff was injured, occurred in the Charlestown Yard, so called, of the defendant com-

pany in the City of Charlestown, Massachusetts, February 9, 1904. Writ dated August 10, 1905. Plea the general issue with brief statement as follows: "And for brief statement the defendant further says that before the purchase of the writ in the above entitled action, to wit: On the 9th day of February, 1904, at Boston, Massachusetts, the said plaintiff, by his certain writing of release, by him signed and sealed with his seal and in court reproduced, in consideration of the sum of fifteen dollars ($15) to the plaintiff in hand, paid by the Boston & Maine R. R. receipt whereof was thereby acknowledged and the further consideration of the payment of the bill of Dr. Sawin, the plaintiff did thereby release and forever discharge said Boston & Maine R. R., defendant in above entitled action, its officers, agents and servants, from any and all actions, causes of action, claims and demands for, upon, or by reason of any damage, loss, injury or cost which heretofore had been, or which thereafter might be sustained by said plaintiff on account of or in consequence of an accident at or near Boston, Massachusetts, on or about February 9th, 1904, whereby said plaintiff claimed to be injured on the Eastern Division train and the defendant avers that the accident therein referred to and from all consequences of which said plaintiff therein released the defendant is the same accident complained of in the plaintiff's writ and the sole cause of action in the present suit."

Tried at the April term, 1906, of the Supreme Judicial Court, Aroostook County. Verdict for plaintiff for $1,416.66. The defendant company then filed a general motion to have the verdict set aside.

The written release given by the plaintiff to the defendant company, mentioned in the defendant company's brief statement and which was introduced in evidence during the trial, and is discussed and considered in the opinion, is in words and figures as follows:

"Boston & Maine Railroad.

"$15.00

"I Abner Valley of Fort Fairfield, Maine, in consideration of the sum of fifteen and no-100 dollars to me in hand paid by the Boston & Maine Railroad, the receipt whereof is hereby acknowl-

edged, do hereby release and forever discharge said Boston & Maine Railroad, its Officers, Agents and Servants, from any and all actions, causes of action, claims and demands for, upon, or by reason of any damage, loss, injury or cost which heretofore has been or which hereafter may be sustained by me on account of or in consequence of an accident at or near Boston, Mass., on or about Feb'y 9, 1904, whereby I was injured while a passenger on a Eastern Div. train.    Said Railroad agreeing to pay Dr. Sawin.

" I have read the above.

" In Witness Whereof, I have hereunto set my hand and seal at Boston, Mass., this 9th day of Feb'y nineteen hundred and four.

ABNER VALLEY (seal)"

"Signed and sealed in the presence of

> LYDIA A. CARLETON,
> R. T. DAMON."

All the material facts are stated in the opinion.

*Herbert W. Trafton and Ira G. Hersey*, for plaintiff.

*Albert W. and John B. Madigan and Herbert T. Powers*, for defendant.

SITTING: EMERY, C. J., WHITEHOUSE, STROUT, SPEAR, CORNISH, JJ.

EMERY, C. J.    This was an action to recover damages for personal injuries sustained by the plaintiff from the negligence of the defendant.    The verdict was for the plaintiff.    On this motion for a new trial the only question is whether the evidence justified the necessary finding that a written release of the cause of action given by the plaintiff to the defendant for the consideration of fifteen dollars was obtained by such misrepresentation as amounts to legal fraud.

The plaintiff had charge of some cars loaded with potatoes shipped from Fort Fairfield.    While the train was at rest in the freight yard of the defendant company in Charlestown, Mass. and the plaintiff was lawfully in the caboose car in a standing position, a moving locomotive struck the rear of the train with such force that the plaintiff was thrown violently against a table and then to the

floor of the car to his injury.   Getting up, he left the caboose and went along the train to one of his potato cars into which he was helped and remained from about half past three till daylight of a February morning.   He then went at the suggestion of one of the train men to a physician, Dr. Sawin, not in the employ of the defendant company.   He walked the distance being some five or seven minutes walk.   The physician advised him that a rib was broken on the side and another parted from the back bone, and after putting on the usual bandages advised him to see the claim agent of the company, which he did, going over to his office at the Northern Station in Boston.   There is sharp conflict of testimony as to the conversation in the claim agent's office, which conversation, however, resulted in the plaintiff accepting from the claim agent fifteen dollars and a giving in return therefor a written release of all causes of action against the company.   This written release was prepared by the claim agent upon a printed blank form and the plaintiff not only signed it but wrote upon it with his own hand close under the words of release and next before the attestation clause, the words "I have read the above."   He then delivered the writing and took his money and went away.   This was February 9, 1904, and he brought no suit for a year and half afterward viz, August 10, 1905.

At the trial he testified to what he claims were two misrepresentations which he says induced him to give the release.   The first was that the claim agent, on ascertaining that he was not a regular paying passenger but was on a freight train in charge of potato cars and only with the usual papers authorizing him to be there for that purpose, stated to him that he had no valid claim for damages under the circumstances but as he was a poor man he (the claim agent) would give him fifteen dollars as a present to sign the release. This misrepresentation, if there was such, was not a representation of any matter of fact but simply a statement of an opinion on a question of law.   There was nothing in the situation to justify the plaintiff in relying on that opinion or that made it invalidating fraud in the claim agent to assert it.   The plaintiff was about thirty-eight years old and, so far as the evidence discloses, was of average

intelligence and firmness of mind. The claim agent did not seek him. He sought the claim agent. He opened the negotiation and made his claim. He knew the claim agent represented and acted for the other and adverse party. The case on this point is fairly and fully within the principles of *Thompson* v. *Phœnix Insurance Co.*, 75 Maine, 55. In that case the plaintiff, having sustained a large loss from the destruction of his unoccupied house by fire, accepted one fourth of his claim because of his reliance upon the assurance of the company's agent that the non-occupancy of the building at the time of the fire ipso facto wholly avoided the policy. It was held by the court that whether the agent's statements were regarded as of law or fact they did not invalidate the settlement. "In either case" said the court "they were expressions of opinion from the agent of a corporation whose interests were known to be directly hostile to the plaintiff and as a prudent man he ought not to have relied upon them." See also *Mutual Life Insurance Co.* v. *Phinney*, 178 U. S. 327.

As to the other alleged misrepresentation the plaintiff's testimony was that he signed the written release without reading it or knowing its contents, and was induced to do so by the statement of the claim agent that it was merely an acknowledgment of the receipt of a present of fifteen dollars. This testimony is flatly and emphatically contradicted by that of the claim agent, is absolutely uncorroborated by any circumstance or by any other witnesses, and seems to us most improbable. The paper was a regular printed one page blank release of letter paper size with the heading of "Boston and Maine Railroad" in large prominent type of capital letters. In the printed part containing the words of release the words "Boston and Maine Railroad" appear twice in capital letters. There were only ten lines to express the purpose of the paper. After the words of release there was written in the clause, "said Railroad agreeing to pay Dr. Sawin." Under all this the plaintiff wrote with his own hand "I have read the above." At the bottom of the paper below the signature were three blank certificates of audit. The plaintiff admits he was in the office of the claim agent half an hour or so talking the matter over. Granting he was suffering considerable

pain, he does not claim he did not know what he was about nor what he was there for, or that he was at all hurried.   His signature was formally attested in his presence by two witnesses and there were also a number of other persons present in the office at the time.

We think it incredible that the claim agent of so large a corporation, holding an office of such importance and requiring capacity and carefulness and a reputation for integrity, would venture in the presence of so many witnesses to pass such a paper to the plaintiff (who was in no hurry) to sign and to certify in his own handwriting that he had read it, and state to him that it was merely a receipt for a present of fifteen dollars.   Granting that he might be dishonest enough to do so, less than common prudence would have prevented.   The real contents of the paper were too conspicuous. The merest glance at it would have exposed the falsehood.

Nor do we think it credible that the plaintiff, unhurried as he was, having under his eyes a paper so brief and with its contents so conspicuous, would have signed it and written upon its face with his own hand that he had read it, without noting its purport. That he was asked to write upon it in his own hand a statement that he had read it must have directed his attention to its contents.   For him, then, not to read it or note its purport would be incomprehensible.   His handwriting and testimony show him to be a man of full average intelligence and quickness of mind.   Granting his bodily pains, there is no evidence that his mind was clouded.   He was able to walk, climb stairs, talk, negotiate and write understandingly.   His long delay of a year and a half in bringing suit, though advised to do so by different lawyers, tends to show he was conscious of some obstacle.

True, we must assume that the jury found the plaintiff's testimony on this point to be true and did so after seeing him and hearing him testify, but the personal presence of the plaintiff, the oral reciting of his sufferings and losses, and the small amount for which he settled, not unlikely excited so much sympathy that the jury failed to realize the improbability, the unreasonableness of his story.   Studying the evidence apart from such influences we are satisfied the verdict is wrong and must be set aside.

While fraud, when proved, vitiates any contract or settlement, it is not to be lightly assumed to exist but must be proved by trustworthy evidence consistent with undisputed circumstances.    Settlements are favored by the law, but if they are to be set aside upon the uncorroborated testimony of the claimant though made in writing and signed by him, there will be little use in making settlements.

*Motion sustained.*
*Verdict set aside.*