Argued April 1, reversed April 28, rehearing denied June 2, 1914.

## SEECK v. JAKEL.*

### (141 Pac. 211.)

**Contracts—Validity—Restraint of Trade.**

1. A provision in a deed that the property shall revert to the grantors, if any person shall conduct or allow to be conducted any livery business on the premises, is lawful, being only a partial restraint and incident to the transfer of the property.

    [As to the validity of contracts, in restraint of trade, see notes in 92 Am. Dec. 751; 35 Am. Rep. 269; 74 Am. St. Rep. 235.]

**Vendor and Purchaser—Rescission—Laches—Restoration of Consideration.**

2. Fraud in an agreement collateral and subsequent to a transfer of real property, even if such agreement be considered as part of

---

*As to the validity of a stipulation to discontinue, or not to engage in, a particular business, when not ancillary to a lawful contract, see note in 6 L. R. A. (N. S.) 847.     REPORTER.

the principal transaction, affords no ground for relief to the grantee, where he took no action till more than four years after discovery of the fraud, and did not then offer to restore the real property.

[As to the enforcement in equity of stale claims, see note in Ann. Cas. 1914B, 314.]

**Deeds—Breach of Condition Subsequent—Nature and Form of Remedy—Demand.**

3. Under Section 325, L. O. L., providing that any person who has a legal estate in real property and a present right to possession may recover possession, with damages for withholding the same, by an action at law, a grantor may maintain ejectment against the grantee on breach of condition subsequent without previous demand or re-entry.

From Linn: PERCY R. KELLY, Judge.

Department 1. Statement by MR. JUSTICE BURNETT.

This is an action at law in the nature of ejectment, by F. W. Seeck and H. J. Seeck against A. Jakel, A. J. Newman and J. W. Newman, to recover the possession of real property, with damages for withholding the same.

On a trial by the court, without a jury, judgment was rendered dismissing the action, and the plaintiffs appeal. The case is more fully stated in the opinion.

REVERSED.

For appellants there was a brief over the names of *Mr. N. M. Newport* and *Messrs. Weatherford & Weatherford*, with an oral argument by *Mr. Newport*.

For respondents there was a brief over the names of *Messrs. Corliss & Skulason*, and *Mr. H. B. Chess*, with an oral argument by *Mr. Guy C. H. Corliss*.

MR. JUSTICE BURNETT delivered the opinion of the court.

It appears by the complaint, and is admitted by the answer, that on June 29, 1907, the plaintiffs were the owners of two separate tracts of land in Lebanon, Linn

County, Oregon, on one of which they were conducting a general livery and feed stable business, and on the other, which they conveyed to the defendant Jakel, a feed stable, without any livery service. For convenience one tract will be designated as the livery stable, and the other as the feed stable. On the date mentioned the plaintiffs, with the wife of the married one, conveyed the feed stable to the defendant Jakel, in the usual form of bargain and sale deed, but with the following forfeiture clause:

"The above-described real property shall divert back to the grantors, without any cost or expense, if any person or persons shall conduct or allow to be conducted any livery business in or on said described premises, unless by quitclaim deed or written consent of the grantors of this deed."

This deed is set out in full in the complaint, and is said to have been recorded October 2, 1907. After stating that the term "livery business" had a certain clearly distinct local meaning in and about Lebanon, Oregon, which however, is not different from the generally accepted signification of that term, that the property was sold to Jakel for less than the market value, with the understanding that the forfeiture clause should be embodied in the deed as stated, and that the only claim the defendants have to the property is by virtue of the deed, the plaintiffs charge that, in violation of the condition set out in the conveyance, the defendants have continuously, wrongfully, and willfully, since about February 1, 1912, conducted and permitted and allowed to be carried on and conducted at the feed stable a livery stable business and livery business, and that by reason thereof the title to the feed stable has reverted to the plaintiffs in fee simple. They conclude with the allegation that "the plaintiffs are entitled to the possession of the said lots and prem-

ises and barn and the whole thereof, and that the defendants wrongfully withhold the same from them to their damage in the sum of $1,000." They pray for the immediate possession and restitution of the property, together with $1,000 as damages for withholding the same, and for the costs and disbursements. The original ownership of the property and the execution and delivery of the conveyance are admitted by the answer. The defendant Jakel says that since December 1, 1911, he has not been in possession or control of the feed stable, but that the same has been in the exclusive control and possession of the other defendants under and by virtue of a lease which he executed to them, and that whatever use of the premises the other defendants have made was without his authority. The answer also contains this statement:

"And all of the defendants herein allege that since about the 1st of October, 1911, the defendants A. J. Newman and J. W. Newman, without the authority or consent of the said A. Jakel, have in a small way conducted the business of renting and hiring horses and vehicles to third persons from the barn and buildings upon the said premises."

Further answering, the defendants allege in substance that all the real property mentioned is situated in Lebanon, Oregon, a city of about 2,000 population, and that, for the purpose of securing a monopoly of the livery business in said city, and of preventing competition by the defendant A. Jakel in that business, there was incorporated in the deed the provision mentioned; that the real estate was not so situated with reference to other property in the city as to make a restriction upon the use thereof mentioned a reasonable restriction; and that the provision was inserted in the deed for no other purpose than that of preventing Jakel, or any party who might succeed to his title,

from competing upon the said premises with the livery business so carried on by the plaintiffs aforesaid. Again the defendants allege:

"That as a part of the said agreement in restraint of competition it was, before the said deed of conveyance was delivered and said sale consummated, agreed between the plaintiffs and the said A. Jakel that the plaintiffs would not carry on the feed business upon the property owned by them and described in the second paragraph of the complaint herein; that the said defendant A. Jakel was induced to consummate said deal and purchase said property relying upon the said agreement made by plaintiffs aforesaid, and that the plaintiffs caused the said agreement to be reduced to writing, and that the same was signed by the plaintiffs and the defendant A. Jakel; that the defendant A. Jakel was at said time unable to read written English, and that the plaintiffs, knowing said fact, fraudulently inserted in said written agreement a provision allowing plaintiffs to carry on the feed business on the said premises at all times, and that the plaintiffs, for the purpose of deceiving and defrauding the defendant, caused the said contract to be so read to the defendant A. Jakel before the same was signed by him as to omit in the reading thereof the provisions allowing said feed business to be carried on by plaintiffs at all times, and that the agreement as so read to defendant A. Jakel was an absolute agreement on the part of the plaintiffs not to carry on the said feed business on said premises at any time; and defendants allege that the said plaintiffs, in violation of their said agreement not to carry on the feed business upon the premises described in the second paragraph of the complaint, have ever since the execution and delivery of the deed set forth in the third paragraph of said complaint been engaged in carrying on the feed business upon the said premises described in said paragraph in said complaint."

Alleging that the sole purpose of the condition in the deed was to protect plaintiffs against damage to their livery business from the use by defendant A.

Jakel of the feed barn for a livery business, the defendants "offer and tender to the plaintiffs any damage which the plaintiffs may have sustained by reason of a livery business being carried on on said premises by the defendants A. J. Newman and J. W. Newman, in case the court adjudges that the said provision against carrying on said business on said premises is a lawful provision." It is charged, also, by the answer that previous to the commencement of the action the plaintiffs had not demanded possession of the feed barn from any of the defendants, nor made any claim that the condition of the deed was being violated. The answer closes with the statement, in substance, that the defendant A. Jakel, in addition to the payment of $3,000 as the purchase price of the feed barn, has put improvements thereon amounting to $3,500, and that the premises are now worth $8,000. The prayer of the answer is in substance that the action be dismissed; that the defendants have judgment declaring the condition in the deed to be void; that, if the court adjudges the condition to be lawful, the defendants be relieved from any forfeiture, upon paying to the plaintiffs such damages as they may have sustained; and, lastly, for such other and further relief in the premises as may be just and equitable. The answer is traversed by the reply, except as stated in the complaint.

1. Practically the only material dispute on the facts is about the alleged fraud in the agreement restricting the plaintiffs' right to carry on the feed business. The case is determinable principally upon the pleadings. The first question is whether the forfeiture clause is a lawful condition subsequent. In *Wittenberg* v. *Mollyneaux*, 60 Neb. 583 (83 N. W. 842), the transaction in question was an exchange of two hotel properties in a certain city. The conveyance made by one

party to the other provided that the premises therein described should not be used for hotel purposes for a period of two years. Concerning the legality of such a provision the court said:

"Contracts which impose unreasonable restraints upon the exercise of any business, trade or profession are said to contravene sound public policy; but partial restraints are not deemed to be unreasonable when they are ancillary to an actual purchase of property, made in good faith, and are apparently necessary to afford fair protection to the purchaser. * * Upon this branch of the case our conclusion is that the restrictive covenant was valid when made; that events subsequently arising could not, and did not, render it invalid, and that, therefore, the trial court did not err in excluding evidence offered, and instructions requested, on the hypothesis that such covenant was null in its inception, or else became null by reason of the failure of Mollyneaux to furnish fair and reasonable entertainment to all comers."

In the note to the case of *Clemons* v. *Meadows,* 6 L. R. A. (N. S.) 847, it is said:

"The early rule was that any contract which tended to restrain trade was void, but the rigor of that rule has been relaxed so that many contracts in partial restraint of trade are now recognized as valid. Covenants in partial restraint of trade are now generally upheld as valid when they are agreements by a seller of a business not to compete with the buyer in such a way as to decrease the value of the business; by a retiring partner not to compete with the firm; by a partner not to do anything to hinder the business of the partnership; by an assistant or agent not to compete with his master or employer after the expiration of his term of service; by the buyer of property not to use it in competition with the business retained by the seller, and agreements made by the lessor of property not to use it in competition with the business of the lessee. It is, however, a very general rule that all contracts of this character must be incident to and in support of

another contract, or a sale in which the covenantor has an interest which is in need of protection.''

The distinction is clearly made in such cases, between an agreement not to carry on a business without any further provision or any separate contract to which such a condition will be ancillary on the one hand, and instances where, as a mere incident to the transfer of property or of a trade or commercial establishment, it is agreed that either party will not subsequently conduct the same or similar business in competition with the concern involved in the transfer. A case shedding much light on this subject is *Wakefield* v. *Van Tassell,* 202 Ill. 41 (66 N. E. 830, 95 Am. St. Rep. 207, and note, 65 L. R. A. 511). It is there said in the note as a general principle that:

''The owner of property, in conveying it, has a right to insert in the deed such conditions and restrictions concerning the use and occupancy of the premises as he sees fit, so long as the beneficial enjoyment of the estate is not materially impaired, and the public good and interests are not violated. This is on the principle that one may dispose of his property, either absolutely or conditionally, as he chooses.''

We find this language in the body of the opinion:

''But where the condition is made in good faith and stipulates for nothing that is *malum in se* or *malum prohibitum,* before the court should determine the condition to be void, as contravening public policy, it should be satisfied that the advantage to accrue to the public for so holding is certain and substantial, and not theoretical and problematical.''

In the case at bar the parties were contracting on even terms. The defendant Jakel was not obliged to buy the premises, nor were the plaintiffs obliged to sell them. They could legitimately contract in connection with the sale of the feed stable that livery busi-

ness should not be transacted there. It did not create
a monopoly in the business, for the defendants could
carry on the livery business at any other place in
Lebanon which they might acquire, and they could
lawfully carry on any other business on the premises
in dispute except the livery business. There is noth-
ing in such an agreement violating sound public policy
or just business precedents. The defendant grantee
might purchase or not under such conditions as he
chose, and it is nowhere intimated that he did not
understand that such a condition was to be incorpo-
rated in the conveyance under which he holds. Having
taken over the property with the condition annexed,
it was incumbent upon him to preserve his estate by
observing the restriction and providing that those
claiming under him do likewise. We conclude, there-
fore, that the condition was lawful and binding.

The cases cited by the defendants are not at variance
with this conclusion, for they are founded on facts and
circumstances widely different from those here in-
volved: *Burdell* v. *Grandi,* 152 Cal. 376 (92 Pac. 1022,
125 Am. St. Rep. 61, 14 L. R. A. (N. S.) 909), and
*Chippewa Lumber Co.* v. *Tremper,* 75 Mich. 36 (42
N. W. 532, 13 Am. St. Rep. 420, 4 L. R. A. 373), are
the only ones of their kind which diligent search had
disclosed. In both of them an effort was made to en-
force the condition against the sale of liquor, where
the grantor was the owner of a whole town site and
imposed the condition against others while he engaged
in the business himself. Even if these two decisions
are to be regarded as sound, they ought not to control
here, for a restriction applied to only one small parcel
of ground in a whole city falls far short of creating
a monopoly or violating public policy. *Clemons* v.
*Meadows,* 6 L. R. A. (N. S.) 847, note, was where the

proprietors of the only first-class hotels in a city, two in number, without any sale of the business or property of either, made the bald stipulation in substance that one of them should close his hostelry and retire from business on payment of a monthly allowance in money. This was held to be void as purely in restraint of trade, and because there was no accompanying transfer of property or other contract in which the stipulation would be an appropriate element. In *St. Louis, etc. R. Co.* v. *Mathers,* 71 Ill. 592 (22 Am. Rep. 122), the remaining case cited on this point by the defendants, the condition was not contained in the deed, but was embodied in a resolution of the directors of the railway company to the effect that, in consideration of the grant of land by the conveyance, no depot should be established by the company within three miles of a certain town. This was an attempt by a public service corporation to arbitrarily circumscribe its duties to the public in a matter in which the whole people was directly concerned and was properly condemned. The same doctrine is taught in *Holladay* v. *Patterson,* 5 Or. 177. These cases are not analogous to the one in hand, and are not applicable here.

2. The defendant Jakel, however, contends that he was overreached and defrauded in the collateral agreement, which seems to have been made some months after the execution of the deed, in that, contrary to his understanding, the provision was inserted allowing the plaintiffs the right to carry on the feed business in their livery stable at all times. That contract, after the formal parts and the recital that A. Jakel had bought and had that day taken possession of the feed sheds and real premises belonging to the same, of Seeck Bros., provided that:

"The said Seeck Bros. hereby agree and bind themselves subject to the law not to start a feed shed within

the city limits of Lebanon so long as the said A. Jakel may be the owner of the feed shed purchased of the said Seeck Bros.   However, the said Seeck Bros. reserve the right to feed and care for any and all horses that may be brought to their livery barns to be cared for on the 4th of July's and all other times in the livery property owned by Seeck Bros. situated on the south side of Bridge Avenue, in Lebanon, Linn County, Oregon.''

In his testimony the defendant contends that when he executed the contract he did not hear read the words ''and all other times''; that he is unable to read written English, and hence was overreached and defrauded in that contract so that the consideration for the condition in the deed failed, with the result that he should be relieved from the condition.   His testimony is all that is given on the part of the defendants on this subject.   He says that the restriction of the livery business at the feed stable and the restriction of the feed business at the livery stable were talked about during the negotiations for the property, but nothing more was said on the subject when the deed was executed on June 29, 1907.   He testifies that the contract restricting the plaintiffs from doing feed business was made after the delivery of the deed, and about a week after the deed was recorded, and that it was about two months afterwards when he discovered that the words mentioned were in the contract.   He states that he operated the feed barn as such about 4½ years, or until the time he leased it to the other defendants. The plaintiffs utterly deny that anything was said about preventing them from doing feed business until long after the deed had been executed, and that then, when the matter was broached by the defendant Jakel, they refused to permit any restriction on their business, as conducted at the livery stable, but agreed

that they would not start any new feed business and, in pursuance of those latter negotiations, the contract was drawn, as already quoted, and executed by themselves and the defendant Jakel. Considered in the light most favorable for the defendants, the conveyance of the feed stable with the forfeiture clause and the contract forbidding the plaintiffs from engaging in the feed business constituted an entire transaction which must be wholly affirmed or entirely rescinded. Both on the pleading and the testimony the defendants are not in any position to claim anything by virtue of the agreement excluding the plaintiffs from the feed business, for at least two reasons: They did not act promptly on discovering the alleged fraud; and, second, they do not allege an offer to return the property acquired by the defendant Jakel in the transaction. In *Scott* v. *Walton,* 32 Or. 460, 464 (52 Pac. 180, 181), Mr. Justice Bean lays down the rule in this language:

"A party who has been induced to enter into a contract by fraud has, upon its discovery, an election of remedies. He may either affirm the contract and sue for damages or disaffirm it and be reinstated in the position in which he was before it was consummated. These remedies, however, are not concurrent, but wholly inconsistent. The adoption of one is the exclusion of the other. If he desires to rescind, he must act promptly, and return or offer to return what he has received under the contract. He cannot retain the fruits of the contract awaiting future developments to determine whether it will be more profitable for him to affirm or disaffirm it. Any delay on his part and especially his remaining in possession of the property received by him under the contract, and dealing with it as his own, will be evidence of his intention to abide by the contract."

In our own state, authorities to the same effect are these: *Wells* v. *Neff,* 14 Or. 66 (12 Pac. 84, 88) ; *Crossen*

v. *Murphy,* 31 Or. 114 (49 Pac. 859) ; *State* v. *Blize,*
37 Or. 404 (61 Pac. 735); *Dundee Mortgage Co.* v.
*Goodman,* 36 Or. 453 (60 Pac. 3); *Van de Wiele* v.
*Garbade Co.,* 60 Or. 585 (120 Pac. 752). The follow-
ing precedents and many more which might be cited
teach the same doctrine: *Rabitte* v. *Alabama Great S.
Ry. Co.,* 158 Ala. 431 (47 South. 573) ; *Norwich Union
F. Ins. Soc.* v. *Girton,* 124 Ind. 217 (24 N. E. 984) ;
*Valley* v. *Boston R. Co.,* 103 Me. 106 (68 Atl. 635) ;
*Drohan* v. *Lake Shore Ry.,* 162 Mass. 435 (38 N. E.
1116) ; *Pangborn* v. *Continental Ins. Co.,* 67 Mich. 683
(35 N. W. 814) ; *Crippen* v. *Hope,* 38 Mich. 344; *Morris*
v. *Great Northern Ry. Co.,* 67 Minn. 74 (69 N. W. 628) ;
*Lane* v. *Dayton Coal Co.,* 101 Tenn. 581 (48 S. W.
1094) ; *Brainard* v. *Van Dyke,* 71 Vt. 359 (45 Atl. 758) ;
*Town's Admr.* v. *Waldo,* 62 Vt. 118 (20 Atl. 325) ;
*Louisville etc. Ry.* v. *McElroy,* 100 Ky. 153 (37 S. W.
844) ; *East Tenn. Ry. Co.* v. *Hayes,* 83 Ga. 558 (10 S. E.
350) ; *Vandervelden* v. *Chicago Ry. Co.* (C. C.), 61 Fed.
54; *Barker* v. *Northern P. Ry. Co.* (C. C.), 65 Fed. 460.

3. It remains to consider the propriety of the remedy
which the plaintiffs have invoked. In the language of
Mr. Justice McBRIDE in *O. R. & N. Co.* v. *McDonald,*
58 Or. 228 (112 Pac. 413, 32 L. R. A. (N. S.) 117) :

"We have an instrument in which the clause in con-
troversy is couched in the exact language of a condi-
tion subsequent, plain, unambiguous, and unqualified,
and we would pervert both law and language to hold
that these apt words mean something different from
their ordinary import."

The subject of the transaction embodied in the deed
was the legal estate in the feed stable. The parties,
by their solemn contract, undertook to direct the dis-
position and course of that estate. By the same in-
strument is provided for the transfer of the legal
estate to one party and for its return to the other.

As stated in the syllabus of *Dolan* v. *Baltimore,* 4 Gill (Md.), 394:

"If the conditions of the deed have not been performed, the whole estate, legal and equitable, will have reverted to the heirs of the grantor, unless the heirs of the surviving trustee can allege and prove, in a court of equity, such positive agreement on the part of the grantor, or his heirs, or such specific acts of the parties, with distinct knowledge of the grantor, or his heirs, amounting to evidence of such an agreement as would entitle the claimants. by a bill for specific execution of such agreement, to a deed of conveyance, discharged of the conditions so violated."

Again, in *Rowell* v. *Jewett,* 71 Me. 408, the rule is thus laid down:

"The grantee in a conditional deed, if he refuses to perform the conditions upon which his title depends, forfeits his estate none the less because he may have paid some portion of its value by way of consideration or to relieve it from encumbrance.    The estate reverts to the grantor as a matter of legal right, and if he sees fit to enter for the breach of condition, and to claim a forfeiture, the estate reverts in him to all intents and purposes, without regard to the outlays which the conditional grantee may have made on account of it."

To the same effect in *Maginnis* v. *Knickerbocker Ice Co.,* 112 Wis. 385 (88 N. W. 300, 69 L. R. A. 833); *Barker* v. *Cobb,* 36 N. H. 344.

It is said in Section 325, L. O. L., that:

"Any person who has a legal estate in real property, and a present right to the possession thereof, may recover such possession, with damages for withholding the same, by an action at law."

The legal effect of the conveyance in question being to restore to the grantors the legal estate therein, upon a breach of the condition named in the conveyance, the result is to equip the plaintiffs with an interest in the

property upon which the statutory action of ejectment may be founded; a breach of the condition being shown. A statute, almost identical in terms, was construed by the Supreme Court of Washington in *Lewiston Water & Power Co.* v. *Brown,* 42 Wash. 555 (85 Pac. 47), wherein it was held that the statute dispenses with the ancient condition requiring the plaintiff to show a previous demand for possession before commencing proceedings to recover the land; the court saying:

"Neither demand or re-entry is made a condition precedent to the right to maintain the action, and, since this section was intended to supersede the common-law remedies for the recovery of real property, it must be held to contain in itself all of the limitations on the right to maintain such an action."

The theory that the claimant must re-enter or make demand for the possession of the premises is founded on the common-law ceremony of livery of seisin; the contention being that, in order to divest an estate, the same formality must be observed which was used in creating it. At common law it was necessary for the creation of an estate in freehold that the parties should go upon the land, or in sight of the same, and there the grantor should deliver to the grantee a twig or a clod of earth and formally invest him with the possession of the premises; and this was called livery of seisin, a *sine qua non* in common-law conveyancing. This is the sole foundation for the idea that previous demand must be made before bringing ejectment for the recovery of land on condition broken. Livery of seisin, however, has long since fallen into desuetude, and in the light of the modern registry statutes it is no longer considered necessary. In *Cornelius* v. *Ivins,* 26 N. J. Law, 376, 387, the court says:

71 Or.—4

"The practice has been long settled, and as an actual entry on the land is but a formal and unmeaning ceremony, devoid of any practical meaning, and unattended by any real advantage, there can be no utility in enforcing it, however strong the technical reasons in its support. In *Goodright* v. *Cator,* Lord MANSFIELD, in delivering the opinion of the court, said: 'We look upon it as having been fully settled in 1703, by the opinion of all the judges, upon deliberation and consideration of all the cases, that actual entry is only necessary to avoid a fine, and so the practice has been ever since. The reason of the thing is agreeable to the practice, for it is absurd to entangle men's rights in nets of form without meaning, and an ejectment being a mere creature of the court, framed for the purpose of bringing the right to an examination, an actual entry can be of no service.' "

In addition to the cases already cited, the following precedents teach the same doctrine that ejectment for breach of a condition subsequent may be successfully prosecuted without previous demand or re-entry: Tyler, Ejectment, p. 179; 2 Devlin on Deeds (3 ed.), § 959; *Cowell* v. *Springs Co.,* 100 U. S. 55 (25 L. Ed. 547); *Martin* v. *Ohio River R. Co.,* 37 W. Va. 349 (16 S. E. 589); *Ritchie* v. *Kansas, etc. R. Co.,* 55 Kan. 36 (39 Pac. 718); *Sioux City etc. Ry. Co.* v. *Singer,* 49 Minn. 301 (51 N. W. 905, 32 Am. St. Rep. 554, 15 L. R. A. 751); *Plumb* v. *Tubbs,* 41 N. Y. 442; *Ruch* v. *Rock Island,* 97 U. S. 693 (24 L. Ed. 1101); *Union Pac. R. R. Co.* v. *Cook,* 98 Fed. 281 (39 C. C. A. 86); *McKelway* v. *Seymour,* 29 N. J. Law, 329; *Jackson* v. *Crysler,* 1 Johns. Cas. (N. Y.) 125; *Jetter* v. *Lyon,* 70 Neb. 429 (97 N. W. 596); *Moss* v. *Chappell,* 126 Ga. 196 (54 S. E. 968, 11 L. R. A. (N. S.) 398); *Atlantic & Pac. R. R.* v. *Mingus,* 165 U. S. 413 (41 L. Ed. 770, 17 Sup. Ct. Rep. 348); *Ellis* v. *Kyger,* 90 Mo. 660 (3 S. W. 23); *O'Brien* v. *Wagner,* 94 Mo. 93 (7 S. W. 19, 4 Am. St. Rep. 362); *Avery* v. *Kansas City & South R. R.*

*Co.,* 113 Mo. 561 (21 S. W. 90); *Kirk* v. *Mattier,* 140 Mo. 23 (41 S. W. 252); *Gulf etc. Ry. Co.* v. *Dunman,* 74 Tex. 265. (11 S. W. 1094); *Little Falls Water Power Co.* v. *Mahan,* 69 Minn. 253 (72 N. W. 69).

The conclusion is that the condition in the deed is valid and binding; that a breach of the condition is shown by the facts stated in the answer substantially that the tenants of the defendant Jakel have conducted a livery business on the premises conveyed; and, finally, that the action of ejectment instituted by the plaintiffs is a proper remedy for the recovery of the property for the breach of the condition.

The reversal of the judgment presents features somewhat onerous for the defendants; but the condition in the deed was inserted knowingly and understandingly on the part of both the grantors and the grantee, and was made to be observed. Courts of law, especially, cannot make new contracts for parties, nor relieve them from the consequences of their voluntary stipulations. Aside from the matter of pleading, which omits to state a return or offer to return the property as a condition precedent to the rescission of the contract by the defendant Jakel, it may well be doubted whether the contract preventing plaintiffs from operating a feed stable is supported by any consideration. The testimony of the defendant Jakel himself, as recited above, shows that nothing was said by either party about such a contract at the time the deed and its condition subsequent were executed and delivered; that it was some months after that before the other contract was executed. It would seem that the execution and delivery of the deed was a complete transaction, and it must be presumed to contain all the stipulations of the parties, and that any subsequent agreement must be founded upon a new consideration

so that, even if the later contract were framed as the defendants claim, it could not affect the consideration of the original stipulation in the deed. We can only enforce the condition subsequent as we find it embodied in the deed. We find nothing in the pleadings or the testimony authorizing us to relieve the defendant, or to enlarge the estate which he knowingly and voluntarily purchased, encumbered as it was by the condition named.

The judgment of the Circuit Court is reversed.

REVERSED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE MOORE and MR. JUSTICE RAMSEY concur.