Buford, J.
 

 This was a suit brought by a widow for the wrongful death of her husband, which death occurred while he was in the employ of Florida Power & Light Company'
 
 *1341
 
 and while he was performing his duties as such employee and while the defendant, Florida Power & Light Company, was engaged in one of the statutory hazardous occupations as defined by Sections 4971 to 4974, inclusive, Rev. Gen. Stats., 7058 to 7061, inclusive, Comp. Gen. Laws, to-wit, “generating and selling electricity.”
 

 The judgment was in favor of the plaintiff for $8,445.00.
 

 There were 82 assignments of error. The only question raised by any of them about which the court could have any doubt as to resolving in favor of the defendant in érror is that presented by assignments challenging the sufficiency of the evidence. In determining this question the court has been materially assisted by the briefs which have been well and exhaustively prepared by both counsel for the plaintiff in error and for the defendant in error. Especially have we been aided in this connection by the clear, concise and accurate statements contained in the brief for the defendant in error as to the facts proven by the testimony with citations directing us to the record page where the foundations for such statements are found.
 

 There are two material matters as to which the sufficiency of the evidence is challenged. The first is as to whether or not there was sufficient evidence of negligence on the part of the defendant to warrant a jury in returning a verdict against the defendant, assuming .that all other material allegations had been proven. As to this the record discloses sufficient substantial evidence to support a verdict and especially so when such verdict has been approved by a trial judge- who had an opportunity to hear all of the evidence and to observe the manner and demeanor of the witnesses on the stand.
 

 It is well settled in this state that where the evidence is conflicting about any question material to the determination of the cause and there is substantial evidence to support the
 
 *1342
 
 findings of the jury upon the question at issue, the finding of the jury will not be disturbed as to that point. Standard Grower’s Exchange v. Howard, 82 Fla. 97, 89 So. R. 345; Jacksonville etc. R. Co. v. Hunter, 26 Fla. 308, 8 So. R. 450; Jacksonville etc. R. Co. v. Wellman, 26 Fla. 344, 7 So. R. 845; Logan v. State, 58 Fla. 72, 50 So. R. 536; Allen v. Lewis, 43 Fla. 301, 31 So. R. 286.
 

 The defendant pleaded, among other things, a release signed by the plaintiff on the day following the death of the ’plaintiff’s husband. To this plea the plaintiff interposed a replication as follows:
 

 “For replication on equitable ground to the second of defendant’s pleas, says: That the alleged release set up in said plea was signed by the plaintiff the day following the death of her husband; that his death produced a great mental shock to plaintiff and she was in such a nervous and mentally unbalanced condition that she was incapable of understanding and transacting business and did not comprehend the purport of the alleged release; that at the time of the signing of said release plaintiff had for some twelve or thirteen hours been under the care of a trained nurse who was an agent, servant or employee of defendant, and who was delegated by the defendant to care for plaintiff, and plaintiff was in such a nervous condition that said nurse had been continuously giving to plaintiff certain drugs or medicines which clouded and stupefied plaintiff’s mind.
 

 “That during the afternoon of the day following the death of P. J. Horn, her husband, plaintiff accompanied by the nurse, was sent in an automobile of the defendant to the office in the Exchange Building of the City of Miami, of a Mr. Frazier, who was then an agent, servant or employee of defendant; that the said nurse
 
 *1343
 
 had gained the confidence of the plaintiff and that the said nurse represented to the plaintiff that the defendant would deal fairly with the plaintiff, and urged the plaintiff to do whatever the said Frazier told her to do.' That at the said time the plaintiff was a woman entirely uneducated in business and having no. experience in business affairs, and that the said Frazier was then an expert claim adjustor and thoroughly familiar with the business of adjusting claims obtaining settlements and releases from persons who might have claims of liability against the defendant company. The said Frazier informed the plaintiff that he was paying the undertaker’s bill and would provide plaintiff railroad fare and expenses to accompany the body of the said P. J. Horn to Alabama. The said Frazier then falsely represented to the plaintiff that the alleged release was merely a release of the body of P. J. Horn from the undertaker’s and that it would be necessary for the plaintiff to sign the said release in .order that she could take the body away; and that said Frazier knew that such representation was false and intended that the plaintiff should act upon the same. And the plaintiff, relying on said false representation and believing it to be an instrument as represented by the said Frazier, did not read the said alleged release but signed the same.
 

 “That at the time of the signing of the said release the plaintiff was mentally incapable of comprehending the purpose of the alleged release as aforesaid, and did not understand the nature of said release; that plaintiff would not have signed the alleged release had she not believed it to have been as represented by the said Frazier, or had she been mentally capable of understanding the purport thereof, or if the plaintiff had
 
 *1344
 
 believed that the release she signed was anything more than a release of the body as aforesaid. Plaintiff further says that after the signing of the said alleged release said Frazier gave her a check for $726.00 which plaintiff did not keep but returned the same to Frazier.
 

 “Plaintiff says at the time of signing said alleged release she had no opportunity to consult with attorneys and did not know and had no way of knowing what her rights in the premises were, and that the defendant well knew this, and well knowing that the plaintiff was mentally unbalanced by reason of the shock produced by the death of her husband and by the use of drugs and medicines given her by defendant’s nurse, that the defendant, through its agents, servants or employees, the said nurse and said Frazier, used undue influence upon the plaintiff by virtue of the facts as herein set out in order to obtain frolm the plaintiff the execution of the alleged release.
 

 “Plaintiff says that defendant did pay the undertaker’s bill and provided her with a ticket and furnished her with certain expenses necessary to enable her to accompany the body of P. J. Horn to the plaintiff’s home in Alabama; that these expenses were voluntarily defrayed by defendant and that in defraying them the defendant did what it was under legal obligation to do, and has discharged its liability to the plaintiff to the extent of the money paid; that these items- were proper elements of damage in this suit against the defendant, but plaintiff says that because the defendant did pay these items that she does not ask for damages against the said defendant as to the said funeral expenses.
 

 “WHEREFORE, by reason of the fact's as herein-above set out, plaintiff says that the consideration for the said alleged release has wholly failed; that it was
 
 *1345
 
 obtained by fraud; that she was mentally incapable of understanding the alleged release at the time of the execution thereof; that undue influence was used in its procurement; and that the plaintiff signed said alleged release by mistake, believing it to be an instrument of a different kind than the one executed; and plaintiff says she ought' not to be barred from prosecuting this suit by reason of the alleged release.”
 

 There was a demurrer to the replication which was overruled. The replication contained sufficient allegations to meet the plea which had been interposed and was responsive to the plea. The demurrer was properly overruled.
 

 On the trial the plaintiff by substantial evidence established the allegations contained in the replication. In this connection the evidence shows that the release was procured from the plaintiff at a time when she was not capable of determining matters of this character for herself. Mr. Horn was killed between 9 and 10 o’clock on the night of August 13th. A Miss Fletcher, who was in the employ of the defendant and who was a trained nurse, was dispatched to the scene ostensibly for the purpose of ministering to the condition of the bereaved family, and especially to the widow. It is evident also that a part of her business there, and a major part so far as the company was concerned, was to influence the widow to make an immediate adjustment with the defendant or its surety, and that she exerted herself effectively along this line without letting the plaintiff know that it was her business to procure an adjustment in behalf of the defendant. She advised and counseled the adjustment that was made and there is enough evidence disclosed in the record to warrant the jury in believing that to procure this end she administered to the plaintiff a drug and the matter was so
 
 *1346
 
 contrived that the insurance company which carried the liability on behalf of the defendant had in its possession a release for an inadequate consideration (if the defendant was liable for the death of Horn) executed by the widow and plaintiff in error here within 15 hours at the outside of the time of the, death of Horn and at a time when the plaintiff was relying entirely for counsel and advice upon the nurse Employed by the defendant to adjust the claim, at a time when she was physically and mentally incapacitated to engage in business transactions, when she had been without food for some 24 hours, without sleep for some 30 hours, when she was suffering from the shock of the sudden death of her husband, when she was without means to pay funeral expenses and to meet other necessary demands.
 

 A release procured at such a time and under such conditions for an inadequate consideration is unconscionable.
 

 Counsel for the plaintiff-in-error have relied largely upon the opinion in the case of Fla. East Coast Rwy. Co. v. Thompson, 93 Fla. 30, 111 So. R. 525. To sustain the contention that the plaintiff in this case iá bound by the release procured, a casual reading of the Thompson case will reveal that the release was procured under entirely different circulmstances from those circumstances which obtained in the instant case and that it was obtained by entirely different methods than those methods indulged in when release here in controversy was procured. In the Thompson ease there was no evidence of over-reaching, while in this case the defendant pretended to send the nurse to minister to the wants of a. suffering woman when its real purpose was to send an adjustor to secure from her a release for as small a compensation as possible.
 

 In Fla. East Coast Rwy. Co. v. Thompson,
 
 supra,
 
 this Court, speaking through Mr. Justice Strum, say:
 

 
 *1347
 
 “Where the parties to a written release of liability for personal injuries are competent to contract and do so understanding^, and there is no other evidence of fraud or overreaching, mere inadequacy of the consideration for the release is not alone sufficient to establish fraud in the procurement thereof, but it is a circumstance to be considered upon the question of the existence
 
 vel non
 
 of fraud, and sometimes but little additional supporting evidence is necessary to establish fraud. Neilsen v. Portland Gas & Coke Co., 76 Or. 505, 147 p. 554. But the contracting parties, not the courts, must fix the
 
 quid pro quo.
 
 Missouri Pac. R. R. Co. v. Goodholm, 61 Kan. 758, 60, p. 1066; Cleveland etc. R. R. Co. v. Hilligoss, 171 Ind. 417, 86 N. E. R. 485, 131 Am. St. R. 258; Allen v. Ruland, 79 Conn. 405, 65 A. 138, 118 Am. St. R. 146, 8 Ann. Cas. 344; 34 Cyc. 1053, and cases cited. Whether or not fraud has been shown to exist in a given case is, as a general rule, a question of fact for the jury, 23 R. C. L. 418 (49).. But since honesty, not fraud, is presumed neither the courts nor juries may suppose the existence of fraud, where the facts established by the manifest weight and probative force of the evidence may be fairly and reasonably reconciled with honesty and pure dealing. Although the positive testimony of one witness (the releasor) as to the existence of fraud is sufficient to require the case to be submitted to the jury (Gordon v. Great A. & P. Co., 243 Pa. 330, 90 A. 78; Clayton v. Consolidated Traction Co., 204 Pa. 536, 54 A. 332), it does not necessarily follow that such testimony will be sufficient in all cases to sustain a finding of fraud (Bessey v. Minneapolis etc. Ry. Co. 154 Wis. 334, 141 N. W. R. 244; Railroad Co. v. Shay, 82 Pa. 198; De Douglas v. Union
 
 *1348
 
 Traction Co., 198 Pa. 430, 48 A. 262; Valley v. Boston & Maine R. Co., 103 Me. 106, 68 A. 635, and other cases hereinafter cited.”
 

 In 23 R. C. L. p. 418 the author says:
 

 “The general rules of practice and procedure where a release is involved in no wise differ from those generally applicable. Issues of fact on the question whether a release is a valid contract and binding on the releasor are for the determination of the jury, on the evidence, under proper instruction from the court. Hence, in an action to recover damages for injuries caused By negligence, if the defendant sets up a written release of all claims for damages, signed by the plaintiff, and the latter, not denying its execution sets up that it was signed by him in ignorance of its contents, at a time when he was suffering great pain from his injuries, and not in a state to understand the transaction, caused by his injuries, and by the use of opiates, the question of his capacity to execute a release is for the jury, under proper instructions from the court.”
 

 It appears that there was substantial evidence to sustain the verdict and as the verdict was approved by the trial court and could not be deemed in anywise excessive, it appears that the judgment should be affirmed. It is- so ordered.
 

 Affirmed.
 

 Whitfield, P. J., and Strum, J., concur.
 

 Ellis and Brown, J. J., concur in the opinion and judgment.
 

 Terrell., C. J., not participating.