DEMARK, Appellant, vs. MILWAUKEE ELECTRIC RAILWAY & LIGHT COMPANY, Respondent.

*April 7—April 26, 1910.*

*Release of claim for injuries: Validity: Impeachment: Evidence: Appeal: Review: Questions for jury.*

1. It appearing from the evidence that plaintiff, an Italian who was ignorant of English, understood the Italian spoken by an interpreter through whom the terms of a settlement of his claim against defendant for personal injuries were arranged, testimony as to differences in Italian dialects, offered for the purpose of showing that he did not fully understand the interpretation of a release signed by him, was properly excluded.

2. That the contents of such release were not misstated or misinterpreted to plaintiff, and that he was not coerced or otherwise misled into signing the paper, is *held* to be shown by the evidence.

3. To impeach a formal written instrument on the ground that its execution was procured by coercion or fraud, the proof should be clear and convincing beyond reasonable controversy.

4. In reviewing evidence which the trial court held did not present any question for the jury as to the impeachment of a formal writing, weight should be given to the opinion of the trial judge who saw the witnesses.

APPEAL from a judgment of the circuit court for Milwaukee county: ORREN T. WILLIAMS, Circuit Judge. *Affirmed.*

This is an action to recover damages for personal injuries alleged to have been due to the negligence of a servant of the defendant. The defendant operates a street railway in the city of Milwaukee. About 6 o'clock on the morning of March 28, 1907, the plaintiff boarded a car for the purpose of going to his work. The plaintiff alleges that he received the injuries complained of through the negligence of the motorman, who, after slacking the car for plaintiff to alight, without looking to see whether plaintiff had alighted, suddenly turned on the current and caused the car to start for-

ward with a sudden jerk and increase of speed, by which the plaintiff was thrown from the platform, inflicting injuries which required the amputation of his leg below the knee.

The defendant denies any liability to the plaintiff, on the ground that he was guilty of contributory negligence, and also alleges as a further and separate defense that on June 24, 1907, the plaintiff executed to the defendant a release of all claims and demands on account of the injuries received by him. Plaintiff claimed that he had been overreached and defrauded at the time the release was given, that he did not understand the release, and that the release did not contain the agreement which was actually made. Plaintiff received $250 as a consideration for the release. He has also received from the defendant an artificial limb. No mention is made in the release of the artificial limb. The plaintiff testified that at the time the release was given he was promised a life job and additional money. The interpreter, who had been secured by the plaintiff because plaintiff did not speak English, testified that at the time the release was given the plaintiff requested that he be given a life job, but that the agent of the company informed her that the company would not promise any such position, and that she, in turn, informed the plaintiff that the company would not agree to give him a life job or promise future employment, and she also explained to him that the $250 was in full satisfaction of his claim. Although the interpreter went with the plaintiff to aid him to confer with the defendant's agent in this matter, she was paid for her time by the defendant. The release was made by the plaintiff with the agent of the company through the interpreter and in the absence of the attorney of the plaintiff. At the conclusion of the evidence the trial court granted defendant's motion for a direction of a verdict, and stated that he felt assured from the evidence that the plaintiff understood the nature of the release and that no fraud had been shown. This is an appeal from the judgment.

For the appellant there was a brief by *Gross & Saltzstein,* and oral argument by *Edwin J. Gross.*

*Clarke M. Rosecrantz,* for the respondent.

SIEBECKER, J.    It is strenuously argued that the plaintiff was ignorant of the contents of the release, due to the facts that he understood no English; that he could not read it; and that, owing to differences in the Italian spoken by him and the interpreter, the interpretation of it given to him was not fully understood by him.    The plaintiff's evidence bearing on what occurred at the time of settlement shows that he understood the defendant's representative was negotiating with him for a settlement of the claim he made for damages. Shortly after the accident he had an interview with the company's representative at the hospital, and he then stated that if the company would pay him $5,000 the matter would end there.    This the company refused to consider.    It appears that he and Mrs. Curley, the interpreter, called at the defendant's office a few days after he left the hospital, and through Mrs. Curley he again stated his story of the accident.    By arrangement with Mrs. Curley they again went to the defendant's office a few days thereafter, and the release was then executed.    It is shown that Mrs. Curley had theretofore been engaged by the defendant to interpret between its representatives and Italians who could not speak English, and that she received compensation from the defendant company for the service so rendered by her in this case.    On the occasion of the execution of the release plaintiff states that he was offered $250 in money and the cost of an artificial limb in settlement of his claim, but that he refused to accept such offer and insisted that the defendant obligate itself to employ him for life, and that he understood this condition was agreed to by defendant's agent who negotiated the settlement.    He states that its omission from the written release was not brought to his attention by the interpretation of the writing, and that he

had no knowledge of its contents except such as was communicated to him by the interpreter. We think the evidence wholly fails to show that he was incapable of understanding the Italian spoken by Mrs. Curley, the interpreter. His evidence discloses that he was fully apprised of the terms of the settlement, except as to his claim that he was to be employed by the defendant for life. He received the money with the understanding that it was to be applied in payment of his claim for damages. It is undisputed that he received his information from Mrs. Curley. This shows that he understood her. In the light of these facts, the objection to receiving La Piana's testimony as to differences in Italian dialects was properly sustained.

The question is: Does the evidence show that the plaintiff was induced to sign this release through misrepresentation and undue influence? It is claimed that the interpreter, Mrs. Curley, did not correctly interpret the release to plaintiff and fully inform him as to its contents. In so far as the evidence conflicts on this subject it is a dispute between him and the interpreter. She testifies that she correctly interpreted the writing to him and explained its contents. It is manifest that she understood its import and effect. The facts and circumstances of the transaction and plaintiff's admission of what she told him respecting it confirm her assertion that he understood and comprehended the transaction. She testified positively that she interpreted the writing to him and explained its contents. As stated above, plaintiff's course in the affair confirms her in this claim. It is clear that he was not deceived by having the release misstated to him.

Can it be said that the evidence shows that he was coerced or otherwise misled into signing the paper? His claim that he was told that the company had a paper signed by his cousin showing the accident was his own fault, and that if he litigated the matter it would take a long time and he would get nothing in the end, is denied by the interpreter and the com-

pany's agent. These facts and the accompanying circumstances of the transaction, in view of the conflicting claims of the parties as to defendant's liability, make no such clear affirmative showing as the law requires to impeach the written release and set it aside. The probative force of plaintiff's evidence for such impeachment is of slight weight, and it is fully neutralized by the facts and circumstances of the case and by the positive evidence of the other parties who witnessed the transaction.

"To accomplish impeachment of a formal written instrument on such grounds, the proof must be clear and convincing beyond reasonable controversy." *Steffen v. Supreme Assembly,* 130 Wis. 485, 110 N. W. 401, and cases cited.

The trial court had the advantage of seeing the witnesses as they testified, and concluded that the evidence presented no question for the jury as to the impeachment of this formal writing. Under such circumstances, in passing on such evidence its opinion should be given weight in this court.

· We are persuaded that the judgment dismissing the complaint should be sustained.

*By the Court.*—Judgment affirmed.