FRANK E. BORDEN

*vs.*

SANDY RIVER AND RANGELEY LAKES R. R. CO.

Franklin.   Opinion March 29, 1913.

*Action.  Burden of Proof.  Damages.  Fraud.  Injuries.  Misrepresentation.
Receipt.  Release.  Verdict.*

1. The burden resting on the plaintiff to escape the effect of a written release is a heavy one, because written documents duly signed are not to be lightly disregarded and set aside.  In the absence of fraud, or unconscionable advantage or mental incapacity, such settlements should stand.
2. When the settlement was made, both parties were of the opinion that the injury was not so serious as it proved to be.
3. The settlement was honestly made and must stand.  The mere fact that subsequent recovery was not so rapid as plaintiff expected affords no ground for annulling the settlement.

On motion and exceptions by defendant.  Exceptions not considered.  Motion sustained.  Verdict set aside.

This is an action on the case to recover damages for personal injuries alleged to have been received in consequence of the negligence of the defendant while he was transferring freight from a car on the defendants' narrow guage line to a car of the Maine Central Railroad Company on the adjoining track in the yard at Farmington.  While so employed, the defendant alleges that a timber or bar fell from a raised door of the Maine Central car, striking him on the shoulder and causing the injuries complained of.  The plea is the general issue and brief statement that the plaintiff, before the commencement of this action, in consideration of thirty-five dollars paid to him by the defendant, in a writing by him signed, released and discharged the defendant from all claims for damages to him in person and property, including all expense of

medical attendance and nursing, as set forth in his writ. The jury returned a verdict for the plaintiff for $2000 and the defendant filed a general motion to set said verdict aside.

The case is stated in the opinion.

*Sumner P. Mills*, for plaintiff.

*Frank W. Butler, and Elmer E. Richards*, for defendant.

SITTING: WHITEHOUSE, C. J., CORNISH, KING, BIRD, HANSON, JJ.

CORNISH, J. Assuming that the plaintiff originally had a valid cause of action against the defendant, to recover damages for injuries received on October 21, 1911, he voluntarily released the same on November 3, 1911, and is thereby debarred from recovering in this suit. The evidence fails to disclose any valid ground upon which the settlement then made, and the written release then given, can be set aside.

While transferring freight from a car on the defendant's narrow guage line to a car of the Maine Central R. R. Co. on the adjoining track, in the yard at Farmington, a timber or bar fell from the raised door of the Maine Central car striking the plaintiff upon the shoulder and causing the injuries complained of.

Evidently the injury was not at the time deemed serious. No bones were broken or dislocated. When asked by the foreman immediately after the accident, "if it hurt him much," the plaintiff replied that "he couldn't tell; that his arm was numb." He continued to work during the remainder of the day and did not seek medical assistance until two days after, when he consulted Dr. Linscott, who gave him some salve and recommended hot packs. On the next day, Dr. Pratt was called, under whose advice he went to a hospital in Lewiston, where he remained three or four days and then returned home, where the same treatment of electrical massage was given him. The plaintiff's arm has been kept in a sling except when it was being treated, and this continued disuse may account in a large measure for the present loss of action and feeling.

On October 27, 1911, the plaintiff wrote to the Maine 'Central R. R. Co., as follows: "I am writing to see if you are willing to help me by giving me my time. I was hurt by a timber falling on my shoulder and it laid me up and the doctors say it will be some time before I can work again. . . . I have a wife and two children to support and I can't give them a living. The blow it gave me dropped my arm down useless," etc.

In response to this request, Mr. Ireland, the claim agent of the Maine Central R. R. Co., went to Farmington and met the plaintiff at the hotel on the evening of November 3. After some conversation as to the extent of the injury and the plaintiff's claim, during which the plaintiff testifies that he said he wanted his wages until he could work again, and Mr. Ireland says he wanted forty or fifty dollars, Ireland consulted the general manager's office in Portland by telephone, and then made a counter offer of thirty-five dollars in full settlement, which the plaintiff finally accepted, although as Ireland testified, the plaintiff said it was not enough as he thought he would be laid up another week. Thereupon, Ireland made out a check for thirty-five dollars which he gave to the plaintiff, and wrote out a receipt and release discharging the Maine Central R. R. Co. and the Sandy River & Rangeley Lakes R. R. Co. from all claims and demands of every kind growing out of the accident, and the plaintiff signed it, the names of both railroad companies being inserted, because there was some doubt as to which one was legally liable, a fact that was explained to the plaintiff at the time.

The burden resting upon the plaintiff, to escape the legal effect of a release such as this, is a heavy one. Written documents duly signed are not to be lightly disregarded and set aside. Unless fraud exists, or such misrepresentations or suppression of truth as amount to fraud, or unless the parties are so situated that an unconscionable advantage is taken through lack of mental appreciation of the nature of the transaction or otherwise, such settlements stand; and they should stand. The law favors settlements, and, in the absence of the elements above stated, will enforce them. The fact that subsequent recovery is not so rapid as the injured party may have expected, affords no reason for annulling them. If they are entered into freely, fairly, and with a full knowledge of their purport, the future must take care of itself.

In the case at bar, not one of the destructive elements is present. The plaintiff and not the defendant took the initial step. He wrote to the Company, not the Company to him. At the time of the conference, the two parties met on an equality. The plaintiff, as the evidence discloses, was a man thirty-three years old, in excellent health except for his arm, intelligent and capable of securing his rights. No unfair advantage was sought to be taken of him, and none was taken. No misrepresentations were made. The only statement which the plaintiff asserts Ireland made approaching such fraud was to the effect that he claimed to have letters from Dr. Linscott and Dr. Pratt stating that the plaintiff's disability would be of only about three weeks' duration. Mr. Ireland emphatically denies this, and all the circumstances corroborate his testimony.

The plaintiff further attempts to show that he was unaware of the fact that he was making a final settlement, and supposed that he was receiving thirty-five dollars on account of lost time, and would receive more if further time were lost. To combat the signed release, he says that he signed it without reading it himself, and that Ireland misread it to him. This is a serious charge, and should be substantiated by "trustworthy evidence consistent with undisputed circumstances."

But a careful study of the testimony, taken in connection with the circumstances, refutes all these charges. Mr. Ireland denies them, and says that he handed the release to the plaintiff who took it and apparently read it; and Ireland's whole testimony bears the impress of truth. Moreover, it is well-nigh incredible that a man, who had himself sought the settlement and who was so careful in his business transactions as to keep a carbon copy of all the letters he wrote to the Company, as this man did, should sign a receipt without knowing its contents. That he did know them is proved by the fact that on November 16th, he wrote to the General Manager of the Maine Central R. R. Co., stating that his arm was not improving fast, that he had as yet no use of it, that it would probably be six weeks before he could work, expressed his thanks for what the Company had already done, and asked further help,— "enough more to bridge me over till I go to work." Then he adds these significant words, "Now if you can and are willing I will pay

back what you loan me this time by working for the Company when I get able." This statement, true when written, is utterly inconsistent with the plaintiff's contention at the trial.

When the settlement was made, the plaintiff undoubtedly thought he would soon recover. The event proved otherwise, either because the injury was more serious than he supposed or because he has allowed his arm to remain too long unused.

But the settlement itself was honestly effected on both sides, and must stand. This conclusion is in harmony with recent decisions of this court. *Valley* v. *B. & M. R. R.,* 103 Maine, 106; *Barrett* v. *L. A. & W. St. Ry. Co.,* 104 Maine, 479; *Same* v. *Same,* not yet reported.

From the verdict for the plaintiff, we must assume that the jury found the plaintiff's testimony true; but a careful study of the evidence convinces us that the improbability and unreasonableness of the story were overshadowed by sympathy for one whose injury, as the result proved, did not seem to be fully compensated by the amount received. "Settlements are favored by the law, but if they are to be set aside upon the uncorroborated testimony of the claimant, though made in writing and signed by him, there will be little use in making settlements." *Valley* v. *B. & M. R. R.,* supra.

*Motion sustained.*
*Verdict set aside.*