FRANK E. BORDEN *vs*. SANDY RIVER & RANGELEY LAKES RAILROAD.

Franklin.   Opoinion December 6, 1913.

*Burden of Proof.   Corroborative Evidence.   Damages.   Fraud.
Misrepresentations.   Release.*

1.  When only one reasonable conclusion can be reached by careful and discriminating minds, it is the duty of the presiding Justice to direct a verdict accordingly.
2.  The burden resting on the plaintiff to escape the effect of a written release is a heavy one, because written documents duly signed are not to be lightly disregarded and set aside.
3.  In the absence of fraud, or unconscionable advantage or mental incapacity, such settlements should stand.
4.  Letters written by one party to the other, after an alleged settlement, giving his version of what had been said and done between them, are, when offered in evidence by the writer, merely self serving statements, and are inadmissible.

On exceptions by the plaintiff.   Exceptions overruled and in accordance with the stipulation, judgment to be entered for the defendant.   So ordered.

This is an action on the case to recover damages for personal injuries received by the plaintiff on account of the alleged negligence of the defendant.   The case has been tried once before and the plaintiff recovered a verdict, which was set aside on the ground that the plaintiff, prior to suit, had settled his claim and released in writing the defendant.   See *Borden* v. *Sandy River & Rangeley Lakes Railroad,* 110 Maine, 327.

By agreement of parties, the court record of all evidence taken at the first trial in September, 1912, was offered and admitted, and additional documentary evidence and testimony was admitted, subject to exception noted.   After the evidence was all in, the presiding Justice order a verdict for the defendant, to which order and ruling the plaintiff excepted.   Plea, general issue and brief statement, stating in substance that on the 3d day of November, 1911, the plaintiff, by his certain writing of release by him signed, in con-

sideration of thirty-five dollars to the plaintiff in hand paid by the defendant, the plaintiff did thereby release and forever discharge said defendant for damages to him in person and property for injuries received.

The case is stated in the opinion.

*Sumner P. Mills,* for plaintiff.

*Frank W. Butler, and Elmer E. Richards,* for defendant.

SITTING: SAVAGE, C. J., SPEAR, KING, BIRD, PHILBROOK, JJ.

SAVAGE, C. J.  Action for personal injuries.  This case has been before this court once before, 110 Maine, 327.  The plaintiff then had a verdict, which was set aside on the ground that the plaintiff, prior to suit, had settled his claim and released the defendant.  That the plaintiff had given the defendant a written release of all claims, signed by himself, was not denied.  But the plaintiff claimed that the release had been fraudulently procured, that he did not read it before he signed, that he could not read it, because of weakness of his eyesight, that the defendant's claim agent read it to him, but did not read it truly, and that the release as read was merely the acknowledgement of the receipt of money on account of lost time. Each of these statements was denied by the claim agent, who said that he did not read the release to the plaintiff, but that the plaintiff himself took the release and appeared to read it.  This court, after carefully weighing this evidence in connection with a tell-tale letter written by the plaintiff to the defendant's general manager, after the alleged settlement, quotations from which are found in the opinion, concluded that the plaintiff's story of fraud practiced upon him was so improbable and unreasonable that a verdict of the jury based upon that story was so manifestly wrong that it ought not to be permitted to stand.

Upon a second trial, all of the evidence taken out at the first trial was made a part of the record by agreement.  The plaintiff was allowed to introduce, against objection, certain letters written by him to the defendant's agents, after the settlement, in which he denied having made a settlement.  He also introduced further and corroborative evidence respecting the weakness of his eyesight,—his inability to read writing.  Thereupon, the presiding Justice directed

a verdict for the defendant. The plaintiff excepted, and his exceptions were allowed. And it was stipulated that if the order "directing a verdict for the defendant is overruled, the Law Court is to assess damages and render final judgment for the plaintiff; otherwise final judgment for the defendant."

The letters admitted against objection were clearly inadmissible, and must be excluded from consideration. They are merely self serving statements, and the rule of exclusion is elemental. *Handly* v. *Call,* 30 Maine, 9; *Scribner* v. *Adams,* 73 Maine, 541.

And we think the new evidence touching eyesight does not in reality make the case any stronger for the plaintiff. What the plaintiff and the claim agent said and did at the time of the settlement is of course of the utmost importance. If the plaintiff's eyes were in such condition that he could not read, it would strongly tend to corroborate his story that he did not attempt to read the release. And if there were nothing more than the stories of the two witnesses, with this corroborative evidence, doubtless a jury's declaration of the truth should be allowed to stand. In such a situation it would be error to take the case from the jury. But here we have more. The underlying question is, was the plaintiff fraudulently led to believe that he was giving merely a receipt for money for his lost time, and not a release of his claim for damages? This is the decisive question. The inability to read, if it existed, bears only on the probabilities.

That the plaintiff was not deceived, and that he understood he had made a settlement with the defendant, is shown, we think beyond question, by his letter to the defendant's general manager, written about two weeks after the settlement. In this letter he called attention to the fact that his arm was not improving fast, and that it would be several weeks before he could work; thanked the company for what it had done, and asked for a loan "to bridge me over until I can go to work," promising to repay the loan with labor. This is not the language of a man with a claim which had been recognized by a partial payment, and who had been told by the claim agent, as the plaintiff testifies, that if the arm "did not continue to grow better to let Mr. McDonald (the general manager) know and he would look after it." As was said in the former opinion, the tenor of the letter is "utterly inconsistent with the plaintiff's con-

tention at the trial." This letter so far weakens the effect of the plaintiff's testimony, that no real doubt is left.

When such is the case it is not error to direct a verdict. When only one reasonable conclusion can be reached by careful and discriminating minds, it is the duty of the presiding Justice to direct a verdict accordingly.

The exceptions must be overruled, and in accordance with the stipulation, judgment must be entered for the defendant.

*So ordered.*