TREADWAY v. ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY.

Opinion delivered January 29, 1917.

1. RELEASE—ABSENCE OF FRAUD.—A release or settlement agreement executed by plaintiff, releasing a railway company from further liability resulting from the negligent killing of plaintiff's husband, *held*, not to have been procured by fraud.

2. MASTER AND SERVANT—INJURY TO SERVANT—CAUSE ARISING UNDER FEDERAL EMPLOYER'S LIABILITY ACT.—Where deceased, at the time he was injured, was engaged in repairing the track of a railroad company, which was engaged in interstate commerce, he will be held to be employed in interstate commerce, and his cause of action against the railway company arises under the terms of the Federal Employer's Liability Act, and the deceased having been killed, the right of action was in his personal representatives, and no one else could maintain the action.

3. MASTER AND SERVANT—WHO MAY SUE UNDER THE FEDERAL EMPLOYER'S LIABILITY ACT.—Where deceased was killed and a right of action accrued under the Federal Employer's Liability Act, only his personal representative is vested with authority to sue. The personal representative also has the power to effect a compromise and settlement.

4. SETTLEMENT OF CLAIM—AUTHORITY OF ADMINISTRATOR.—An administrator may compromise and accept settlement of an unliquidated claim for damages without special authority from the probate court. Where the personal representative acts in good faith, those who would impeach his conduct must show fraud or mistake or such gross negligence as would amount to fraud.

Appeal from Pulaski Circuit Court, Third Division; *G. W. Hendricks*, Judge; affirmed.

STATEMENT BY THE COURT.

This was an action commenced by Jessie Treadway in her own right and as next friend to Marie Treadway, Thelma Treadway, and Daisy Treadway, minors, against the St. Louis, Iron Mountain & Southern Railway Company to set aside a judgment rendered in the same court in favor of Jessie Treadway, administratrix of the estate of Robert H. Treadway, deceased, against the St. Louis, Iron Mountain & Southern Railway Company, for the sum of $5,500. The material facts are as follows:

The St. Louis, Iron Mountain & Southern Railway Company is a railroad corporation running through the State of Arkansas into the State of Missouri and is engaged in interstate commerce. On the 14th day of January, 1914, Robert H. Treadway was employed by said railroad company as a section hand in Independence County, Arkansas. He was injured by being thrown from a hand car under circumstances which tended to show negligence on the part of the company and died as the result of his injuries about sixteen days thereafter. He was engaged in repairing the tracks at the time of his injuries and was being carried on a hand car from one point to another in discharge of his duties. He was about thirty-five years old and in good health, and was earning the sum of $40 per month, which he contributed to his family. He suffered excruciating pain from the time he received his injuries until the date of his death. He left surviving him Jessie Treadway, his widow, and three minor children. After his death his widow took out letters of administration upon his estate for the purpose of entering suit against the railroad company to recover damages. Negotiations were opened between her and the defendants' claim agent and the nearest station agent came to her and offered her $3,000 in settlement of her claim and both advised her to settle for that sum. She lived at Sulphur Rock in Independence County,

Arkansas, and in about a week the claim agent returned and offered her $5,000, which she refused.

The claim agent went to Newport and called her up again and offered her $5,000. He told her that was as much as the railroad ever gave for injuring or killing anybody, and was as much as the road ever paid. She declined to accept that amount but at the suggestion of the claim agent, went to Newport for the purpose of going with him to Little Rock to see the other claim agents of the road. After they reached Little Rock, she agreed to accept $5,500 and said they offered in addition to pay the funeral expenses of her husband and the expenses incident to his last illness, which amounted to nearly $500. Mrs. Treadway had been demanding $6,000 for her settlement. After they reached Little Rock, she agreed to take the $5,500 and it was agreed that the money should be paid through a friendly suit to be instituted by her in the circuit court there. In pursuance of this agreement the defendant company furnished her an attorney who prepared a complaint and filed it in the circuit court. The court being regularly in session inquired of her whether the settlement was satisfactory, and she stated that it was and that she desired to have judgment entered accordingly. A jury was waived and by consent of the parties, judgment was rendered in her favor as administratrix of her husband's estate against the railroad company. This was the version of the matter testified to by Mrs. Treadway. She stated further that they had refused to pay her the funeral expenses and the expenses of the last illness of her husband as they had agreed to do, and that they had failed to explain to her all of the elements of damages she was entitled to recover.

On the other hand, it was shown by the claim agent and the attorney whom he selected to represent her, that the whole matter was explained in detail to her, and that she voluntarily agreed to accept the $5,500. The claim agent, in addition stated that she knew from the beginning that he was a claim agent of the railroad, and that when he offered her the $5,000, he told her that he

had no authority to offer her any greater sum; that when he later offered her $5,500, he told her that he had no authority to offer that sum, but that he thought the proper officials would ratify his agreement when they reached Little Rock and the matter was submitted to them; that they did so, and that she understood the whole matter, and that the friendly suit was instituted because it was deemed a valid way to carry out their agreement.

The cause was submitted to the court sitting without a jury and the court found the issues for the defendant company. A judgment was rendered dismissing the complaint of the plaintiffs and to reverse that judgment, plaintiffs have prosecuted this appeal.

*Hal L. Norwood* and *W. K. Ruddell,* for appellants.

1. The conduct of the agents of the appellee was a fraud upon the rights of the appellants. 101 Ark. 95; 47 *Id.* 335; 89 *Id.* 321; 128 Am. St. 195, 200.

2. It was error to render a compromise judgment without looking into the merits to determine whether it was for the best interests of those whom the appellant represented. An administratrix has no more right to make concessions where the interest of children were involved than a guardian would have. 71 Ark. 172; 42 *Id.* 222; 39 *Id.* 235. No administrator can compromise unless for the best interests of the estate, and it must be free from fraud, negligence, or misconduct. 49 Ark. 235; 48 Am. Dec. 760; 30 Ark. 198; Kirby's Digest, § 86.

The burden is on the railway company to show that the compromise was for the best interest of the estate and that it was free from fraud, negligence or misconduct. 30 Ark. 198; 19 S. E. 926; 5 Enc. of Ev. 442.

Administrators are trustees and are bound to know the extent of their authority. 6 Ark. 388; 34 *Id.* 144, 151. See, also, Kirby's Digest, § § 86, 6024. An attorney can not represent both sides of a case. 73 Ark. 575; 3 Am. & Eng. Enc. 299. In the absence of a stat-

ute no debt of a deceased person can be collected by suit, except by an administrator. 51 Ark. 401, 408.

3. Appellant should not be required to refund the amount received. A release procured by fraud may be rescinded without the return of the consideration. 73 Ark. 41; 87 *Id.* 625; 82 *Id.* 105.

*E. B. Kinsworthy* and *W. G. Riddick*, for appellee.

1. An administratrix may settle claims for the benefit of the estate and next of kin, without authority of the probate court. 18 Cyc. 226, 228; 49 Ark. 235,-6; 12 *Id.* 746; 93 *Id.* 353; 98 *Id.* 394; 65 N. E. 1034. The leading cases hold that administrators have the power to compromise all claims. 14 L. R. A. 414; 81 Minn. 495; 52 Ore. 348. Under the Employer's Liability Act (Acts 1911, 55) and the Federal Employers' Liability Act, the personal representatives only can sue in case of death by wrongful act. 81 Minn. 495; 128 Am. St. 195, 200.

2. Plaintiff must return the $5,500 received under the judgment before she can maintain this suit. 67 Ark. 347; 62 *Id.* 274; 117 Mass. 479; 111 Ind. 544; 61 Fed. 54; 85 N. Y. 75; 59 Ark. 259; 17 *Id.* 240; 19 How. 211, 222; 102 U. S. 564, 570; 100 Ky. 153; 71 Fed. 21, and many others.

3. No fraud was shown in procuring the release and judgment. 85 Ark. 592; 102 *Id.* 616; 77 *Id.* 56; 75 *Id.* 266; 100 *Id.* 565. The burden was on plaintiff. Cases *supra*; 116 Fed. 913; 99 Ark. 442; 98 *Id.* 48; 97 *Id.* 268.

4. Appellee was not liable for the death of Robert Treadway. He assumed risks.

HART, J., (after stating the facts). It is contended by counsel for the plaintiffs that the judgment first entered in the circuit court in favor of Jessie Treadway, as administratrix of the estate of Robert H. Treadway, deceased, for $5,500 amounted to no more than a compromise or settlement of her claim for unliquidated damages against the railroad company.

Counsel for the defendant have agreed with counsel for the plaintiffs in their contention in this respect, and on that account for the purposes of this decision, we will treat that judgment as a compromise or settlement of an unliquidated claim for damages against the railroad company.

(1)    Counsel for the plaintiffs first attack the release or settlement on the ground that it was procured by fraud. In our statement of facts, we have set out the testimony introduced by both parties on this branch of the case. If the testimony of the witnesses for the defendant is to be believed, it is manifest that there was no fraud in procuring the settlement upon which the judgment was based or upon which the release (as the parties term it) was executed. Reference is made to the statement of facts for this testimony and we do not deem it necessary to repeat it here.

(2)    Again it is contended that Mrs. Treadway, as administratrix of the estate of Robert H. Treadway, deceased, did not have the authority to settle an unliquidated claim for damages without especial authority from the probate court, and this we consider to be the principal question in the case. In the case of *Pederson* v. *Delaware, Lackawana & West. Rd. Co.*, 229 U. S. 146, Ann. Cas. 1914-C 153, the court held that an employee of an interstate railway carrier, killed while carrying a sack of bolts or rivets to be used in repairing a bridge which was regularly in use in both interstate and intrastate commerce, was employed in interstate commerce within the meaning of the Employer's Liability Act of April 22, 1908, giving a right of recovery against the carrier for the death of the employee while so employed. This decision on this question is binding upon this court. Robert H. Treadway at the time he was injured was engaged in repairing the track of a railroad company which was engaged in interstate commerce. Hence, under the decision of the Supreme Court of the United States just referred to, he was employed in interstate commerce and his cause of action arose under the terms of the Federal Employer's Lia-

bility Act.  The Federal statute vests the right of action
in such cases in the deceased's "personal representative,
for the benefit of the surviving widow or husband and
children of such employee; and, if none, then of such
employee's parents; and if none, then of the next of
kin dependent upon such employee."  So the Federal
statute being applicable, the right of recovery, if any,
was in the personal representative of the deceased
and no one else could maintain the action.  *St. Louis,
S. F. & Texas Ry. Co. v. Seale,* 229 U. S. 156, Ann. Cas.
1914-C, 156; *American Railroad Company* v. *Birch,* 224
U. S. 547; *Mo. Kansas & Texas Ry. Co.* v. *Wulf,* 226
U. S. 570, Ann. Cas. 1914-B, 134.

(3)  It will be noted that under the Federal stat-
utes, neither the surviving widow nor husband and
children of such employee are entitled to maintain the
action.  It can only be brought by the personal repre-
sentative for their benefit.  There can be no parties to
the suit except the personal representative of the de-
ceased employee and the railroad company.  The minor,
neither by guardian or next friend, has anything to do
with bringing the suit or making a settlement of the
claim.  Of course, if the settlement is made, the widow
and the minor children are affected.  Still the statute
does not give them any right to bring an action.  The
personal representative of the deceased alone is vested
with this authority.  The personal representative is the
trustee of the parties to be benefited for the purpose of
bringing the suit and conducting it.  It is his duty to
select counsel to collect evidence and to incur the ex-
penses of a trial.  He alone must determine the advisa-
bility of accepting a verdict as final.  Again, if the
nature of the evidence and the circumstances of the
case should lead the personal representative to the con-
clusion that a recovery was doubtful, or that a com-
promise would be to the best interest of the parties to
be benefited, without commencing the action, he has
the authority to affect a settlement.  The statute con-
templates that the entire matter of enforcing the claim
and of collecting the money shall be in the personal

representative, not only for the protection of the defendant, but also in order that there may be a responsible party to take charge of the interests of those to be benefited. This has been the construction given similar State statutes by the courts of last resort of several States. *Foot* v. *The Great Northern Ry. Co.,* 81 Minn. 493; *Parker* v. *Providence & Stonington Steamship Co.* (R. I.), 14 L. R. A. 414; *Olston* v. *Oregon Water Power Co.,* 52 Oregon 348; *The Pittsburg, Etc., R. Co.* v. *Gipe* (Ind.), 65 N. E. 1034.

This court has recognized the power of the administrator to compromise claims of the estate when done in good faith. In the case of *Wilks* v. *Slaughter,* 49 Ark. 235, the court said that an administrator may compromise the debts due the estate of his intestate notwithstanding that section of the Digest of the laws of Arkansas which provides for the approval of such compromise by the probate court.

(4) Therefore, we are of the opinion that an administrator may compromise and accept settlement of an unliquidated claim for damages without special authority from the probate court. Where the personal representative acts in good faith, those who would impeach his conduct must show fraud or mistake or such gross negligence as would amount to fraud.

It follows that the judgment will be affirmed.