Grafton,
May 5, 1925.

LEWIS A. DAVIS *v.* H. P. CUMMINGS CONSTRUCTION COMPANY.

An employee injured in the course of his employment who knowingly and while of sound mind accepts benefits under the workman's compensation act is barred from any recovery at common law on account of his injuries.

CASE, to recover for personal injuries received by the plaintiff while in the employ of the defendants, who were building a town hall in Lebanon. On the sixteenth day of February, 1924, the plaintiff, who was employed as a carpenter and utility man, was assisting in placing a portion of a truss in the hall, when a snubbing rope which he was holding broke, causing him to fall about twenty-four feet to the basement. He sustained a fracture of the spine. The defendants pleaded the general issue with a brief statement in the form of a bill in equity in which they set forth that on the twentieth day of March, 1924, the plaintiff had knowingly, willingly and voluntarily accepted the provisions of the workman's compensation law; and that on said date he had in writing accepted the provisions of said law, and payments under the same weekly until about the first day of August, 1924; that the plaintiff, on the eleventh day of August, 1924, contrary to his agreement and in violation of the laws of the state, brought an action at common law against the defendants. Wherefore, the defendants pray that the plaintiff may be ordered to dismiss his common law action. The plaintiff, in answer to this plea of the defendants, pleaded that he had never knowingly, willingly and voluntarily released the defendants from any claims at common law or availed himself of any of the provisions of the workman's compensation law. Trial by jury. At the close of the plaintiff's evidence, the defendants moved that the action be dismissed on the ground that it conclusively appeared that the plaintiff had availed himself

of the workman's compensation act by accepting compensation thereunder. The motion was granted and the plaintiff excepted.

Transferred by *Sawyer*, J.

*William H. Sleeper* (by brief and orally), for the plaintiff.

*Warren, Howe & Wilson* and *Fred A. Jones* (*Mr. Howe* orally), for the defendants.

PLUMMER, J. The plaintiff, on the twentieth day of March, 1924, signed a release under seal discharging the defendants from all liability on account of injuries received by him in the accident occurring while in the employment of the defendants on the sixteenth day of February, 1924. The consideration set forth in the release was "one dollar and benefits of New Hampshire compensation act." On the same date the plaintiff received ninety dollars, which was described in a receipt signed by him as "being the portion of my weekly wages for the period from the sixteenth day of February, 1924, to the twenty-ninth day of March, 1924, under the New Hampshire Workman's Compensation Act." From the twenty-ninth day of March to the thirty-first day of July, 1924, the plaintiff received and accepted seventeen weekly payments of fifteen dollars each, and signed receipts therefor. At the top of each receipt in large letters appear the words "Receipt on Account of Compensation." The fifteen dollars paid the plaintiff weekly is described in each receipt as being the proportion of his weekly wages under the "New Hampshire Workman's Compensation Act." The latter words are just above where the plaintiff signed his name. The plaintiff is barred from maintaining his action for negligence under the common law (Laws 1911, *c.* 163, *s.* 4; *Watts* v. *Company*, 79 N. H. 299), unless, when he signed the release and receipts, he did not have sufficient mentality to transact business or they were obtained by fraud. The receipt and acceptance by the plaintiff of any one of the seventeen payments made after the giving of the release would be sufficient to bar the plaintiff's present action. Laws 1911, *c.* 163, *s.* 4. Therefore this suit cannot be maintained if, when the plaintiff signed the release, or when he signed any of the seventeen receipts for the weekly payment of fifteen dollars, he was mentally competent and the receipts were not obtained by fraud.

The plaintiff, to sustain his contention that he was mentally incompetent to transact business when he signed the release and

receipts, testified that he was unable to do business; that he did not read the release or receipts, although on cross-examination he said he presumed he read the receipts, but he did not understand them; that he never knowingly released his common law claim against the defendants. The plaintiff's wife testified that he was not competent to do business. The sister of the plaintiff stated in testimony that she called upon her brother on the twenty-eighth day of March, 1924, and that he hardly spoke to her and did n't notice her much; that he would stare at her and talk about something that was n't being talked about. On cross-examination she said that she did n't think he was crazy, but that he was hardly himself. A young lady testified that she called upon the plaintiff with his nephew in the hospital on the evening of the twentieth day of March, 1924, and although she had a speaking acquaintance with him, he did not recognize her. A specialist upon nervous and mental diseases testified, in substance, that from two examinations he had made of the plaintiff, he could not say that the plaintiff was mentally abnormal. But he testified that the plaintiff was abnormal and in no condition to do business, in answer to questions in which it was assumed that the plaintiff failed to recognize an acquaintance who called upon him in the evening at the hospital, and that he appeared as his sister testified when she called upon him. This testimony of the specialist does not seem to be entitled to much weight, as his opinion is based upon inadequate, hypothetical facts. As against this evidence of the plaintiff's mental incompetency there is much convincing evidence that he was mentally competent. The family physician, who attended the plaintiff from the time of his injury to the date of the trial, except about two months, did not testify that he was incompetent. On the other hand this physician's testimony shows that he regarded him mentally competent. An examination of the plaintiff's evidence at the trial demonstrates that he was not only mentally competent, but very alert and capable, and fully qualified to protect his own interests. The testimony is that the plaintiff was about the same mentally when he testified at the trial as he had been since his injury. In fact it appears that there was no particular difference in his mental condition from the time of his injury to the trial the following October. The plaintiff had an accident insurance policy. After he was injured, he wrote four letters to the insurance company that insured him. Two of these letters were written in April after his accident, one in May, and the other in August. These letters were introduced in evidence. They were written in reference to his accident policy and

his rights thereunder. A perusal of these letters cannot fail to convince anyone that the person who wrote them was not only sound and competent mentally, but was a careful, methodical man, and capable of attending to his business efficiently.

The plaintiff testified that an insurance agent, representing the company that insured the defendants, called at the plaintiff's house before he went to the hospital and said "they was going to let us have some money to help out until they made further arrangements." His wife's testimony was the same in substance. The plaintiff also testified that when the agent came to the hospital on the twentieth day of March, and gave him the check for ninety dollars, at the time the release was signed, the agent said "he came in to let me have a check to help out." This is all the evidence presented by the plaintiff to sustain his claim that the release and receipts were obtained by fraud. This testimony would appear to be inadequate to support the charge of fraud in procuring the release. But seventeen weekly payments were afterwards sent to the plaintiff by mail, and received and accepted by him. As already pointed out, the acceptance of any one of these payments, if done understandingly and without fraud, was sufficient to bar the plaintiff's common law action. Laws 1911, *c.* 163, *s.* 4. There is no evidence that any fraud was practised by the defendants upon the plaintiff in the making of these weekly payments or in securing the receipts therefor. Even if it could be said that the statements testified to by the plaintiff, that the defendants were going to pay him some money to help him out, relate to the seventeen weekly payments, it would not aid the plaintiff. Attached to each check sent to make the weekly payments was a receipt in which the payment was described as being "the proportion of my weekly wages under the New Hampshire Workman's Compensation Act." There was no attempt to deceive the plaintiff as to the purpose of these payments. It was plainly printed in the receipts for what the payments were made. And it must be found upon the evidence that the plaintiff read those receipts, and that he understood them. The plaintiff's evidence falls far short of sustaining his contention that the acceptance of these weekly payments by him was induced by fraud. *Connelly* v. *Brown,* 73 N. H. 193.

An examination of all the evidence in the case demonstrates conclusively that the plaintiff had the requisite mentality to transact business, and that no fraud was practised upon him by the defendants to secure the release and receipts. Upon these issues

reasonable men could not differ; they would find for the defendants (*Waldron* v. *Railroad,* 71 N. H. 362, 364; *Bonnin* v. *Railroad,* 77 N. H. 559, 563); and hence the plaintiff's action is barred by the statute.

*Plaintiff's exception overruled.*

All concurred.