FLORIDA EAST COAST RAILWAY COMPANY, *Plaintiff in Error,* v. JAMES C. THOMPSON, *Defendant in Error.*

En Banc.

Opinion Filed January 18, 1927.

1. A contract procured through fraud is never binding upon an innocent party thereto. As to him, such contract is voidable; as to the wrongdoer it is void.

2. Fraud is never presumed. It must be established by the evidence, and the burden is upon him who asserts it.

3. The existence of fraud will not be assumed upon doubtful or vague parol evidence, especially where there is substantial credible evidence to the contrary.

4. It is the policy of the law to encourage and favor the compromise and settlement of controversies when such settlement is entered into fairly and in good faith between competent parties, and is not procured by fraud or overreaching.

5. Where a formal written release of liability for personal injuries is executed by a competent person in possession of all his faculties, and there exists between the releasor and releasee no fiduciary relation, and the circumstances are such that the releasee, or its representatives, occupied no position of advantage over the releasor, in order to accomplish the impeachment, as for fraud, of a release so executed, proof of the fraud should be clear, cogent, substantial and convincing.

6. Where the validity of a release of liability for personal injuries is attacked as for fraud, evidence of such fraud need not be direct. It may be wholly circumstantial, or a combination of direct and circumstantial evidence.

7. Where the parties to a written release of liability for personal injuries are competent to contract, and do so understandingly, and there is no other evidence of fraud or overreaching, mere inadequacy of the consideration for the release is not alone sufficient to establish fraud in the procurement thereof, but it is a circumstance to be considered upon the question of the existence *vel non* of fraud, and sometimes but little additional supporting evidence is necessary to establish fraud.

8. Whether or not fraud has been shown to exist in a given case is, as a general rule, a question of fact for the jury. But since honesty, not fraud, is presumed, neither courts nor juries may suppose the existence of fraud where the

facts established by the manifest weight and probative force of the evidence may be fairly and reasonably reconciled with honesty and pure dealing.

9. Although the positive testimony of one witness, as to the existence of fraud, is sufficient to require the case to be submitted to the jury, it does not necessarily follow that such testimony will be sufficient in all cases to sustain a finding of fraud.

10. The considerations and legal principles that guide the judicial discretion in directing a verdict and in granting a new trial on the evidence are not the same.

11. Conflicts in evidence are for the jury to decide, but the legal effect of the evidence is a question of law.

12. This Court is very reluctant to interfere with a verdict of the jury as to the facts. Its power to do so, as well as that of a trial court, should be exercised cautiously and with discrimination, and only after a careful consideration of all the evidence in its most favorable aspect to the party in whose favor the verdict was rendered.

13. When the verdict of a jury is manifestly contrary to the evidence, or where the verdict is not supported by the evidence in the sense that there is legally not enough evidence to support the verdict under any reasonable view that may be taken of the evidence, or in the sense that the probative force of the evidence preponderates so strongly against the verdict as to afford just grounds to conclude that the jury acted upon considerations other than the evidence, or that the jury did not give due consideration to the probative force of the evidence, then it is the imperative duty of this Court to set it aside and direct another trial.

14. In exercising its power and duty to set aside a verdict and grant a new trial under proper circumstances, the Court does not encroach upon the province of the jury, for the reason that it does not conclusively settle facts in the form of a verdict, but only gives another jury the opportunity of doing so, and of correcting what appears to be a mistake.

A Writ of Error to the Circuit Court of Monroe County; H. F. Atkinson, Judge.

Reversed and new trial awarded.

*Robert H. Anderson,* of Jacksonville, and *W. H. Malone,* of Key West, for Plaintiff in Error;

*J. F. Busto* and *H. H. Taylor,* of Key West, for Defendant in Error.

STRUM, J.—The defendant in error, James C. Thompson, as plaintiff below, instituted this action against the defendant railway company to recover damages for personal injuries sustained by the plaintiff Thompson while he was an employee of the railway company.

It appears that at the time of his injury the plaintiff, pursuant to the duties of his employment, was engaged in coupling the air hose between two freight cars, having placed himself between and beneath the cars for that purpose. These two cars were embraced within a "cut" of cars standing on a switching track in the yards of the defendant railway company at Key West. A switching crew was engaged in switching other cars on to this track for the purpose of "making up" a train, of which train the car which injured plaintiff was to become a part. While the plaintiff was situated and engaged as stated, another "cut" of cars was "kicked" against the "cut" of cars beneath which plaintiff was working, causing the latter "cut" to roll, striking the plaintiff and causing him to fall, with the result that one of the cars in the latter "cut" ran over and severed plaintiff's left leg between the knee and ankle.

To plaintiff's declaration alleging negligence on the part of the defendant in "kicking" the second "cut" into those

beneath which plaintiff was working, the defendant pleaded, first, the general issue; and second, a release of liability. If valid, the instrument offered in support of the latter plea is a complete release of all liability on the part of the defendant, and therefore a bar to plaintiff's action.

To the pleas of release, plaintiff interposed a replication alleging that said release was procured by fraud in that defendant, at the time of payment to plaintiff of the sum of $350.00, which is alleged to have been the consideration for said release, and while plaintiff was still in the hospital on account of his injury, presented to plaintiff for his signature a certain partly printed and partly type-written instrument, which the defendant, through certain of its representatives, falsely and fraudulently represented to plaintiff was a receipt for wages; that plaintiff was illiterate and unable to read or write, but believing and relying upon said false and fraudulent representations, plaintiff authorized his name to be signed to said instrument; all of which, it is contended by the plaintiff, constituted fraud in the factum. See 23 R. C. L. 413, (42).

Other issues are presented by the pleading, but in the view we take of the case it is unnecessary to state or discuss them.

Verdict and judgment were for the plaintiff in the sum of $15,000.00, to review which judgment the cause is now before us on a writ of error.

Of the several grounds urged by plaintiff in error (defendant below) for reversal, it is necessary in disposing of the cause upon the evidence now before us to consider but one, namely, that the evidence is insufficient to establish fraud in the procurement or execution of the release relied on by defendant.

A contract procured through fraud is never binding

upon an innocent party thereto. As to him, such contract is voidable; as to the wrong doer it is void. If a party to a written release of liability for personal injuries was induced to sign it by false and fraudulent representations either as to the nature or extent of his injuries or as to the contents, import or legal effect of the release, and he himself innocently and justifiably relied upon such representations to his detriment and was guilty of no negligence in failing to ascertain the true facts, he is not bound by such release. This Court will not hesitate to set aside and void a release so procured. But fraud is never presumed. It must be established by the evidence, and the burden is upon him who asserts it. Columbus Elec. Power Co. v. Downs, (Ala.), 106 South. Rep. 593; Aderholt v. S. A. L. Ry., 67 S. E. Rep. 978; St. Louis & S. F. R. R. Co. v. Bruner, 152 Pac. Rep. 1103. See also Sommers v. Apalachicola N. R. R. Co., 85 Fla. 9; 96 South. Rep. 151; Dova v. Hancock, 88 Fla. 503; 102 South. Rep. 642; Green v. First Natl. Bank, 85 Fla. 51; 95 South. Rep. 231; Glass v. Craig, 83 Fla. 408; 91 South. Rep. 332. The burden resting upon the releasor to escape the legal effect of a formal written release, such as the one here involved, is a heavy one. Borden v. Sandy River & R. L. R. Co., 86 Atl. Rep. 242. The existence of fraud will not be assumed upon doubtful or vague parol evidence, especially where there is substantial credible evidence to the contrary. Fivey v. Pennsylvania R. R. Co., 52 Atl. Rep. 472; 23 R. C. L. 417 (48); 10 R. C. L. 897 (46-47). Zdancewicz v. Burlington Traction Co., 71 Atl. Rep. 123.

Where a release of the character now under consideration is involved, the mere assertion of the releasor that he did not understand the nature or effect of the instrument he signed will not suffice to overcome the effect of the release when such assertion not only stands unsupported and

uncorroborated by other evidence or by the circumstances of the transaction, but is positively contradicted by four apparently credible witnesses and is to some extent, at least, inconsistent with the attendant circumstances. Fivey v. Pennsylvania R. R. Co., 52 Atl. Rep. 472; Rayborn v. Galena Iron Works, 149 N. W. Rep. 701; Kowatch v. Pittsburgh Construction Co., 153 N. W. Rep. 326. Nor will mere carelessness or indifference of the releasor in executing such a release be sufficient to avoid the effect of the instrument, when such carelessness or indifference was not induced by fraud or a breach of duty on the part of the released. Wallace v. Skinner, 88 Pac. Rep. 221; Shaffer v. Cowden, 41 Atl. Rep. 786; Valley v. Boston & Maine R. R. Co., 68 Atl. Rep. 635; 34 Cyc 1055, 1056; Texas Midland R. Co. v. Hurst, 262 S. W. Rep. 172; Hammond v. New York Et., R. Co., 97 Atl. Rep. 1011.

As a means of discouraging litigation, it is the policy of the law to encourage and favor the compromise and settlement of controversies when such settlement is entered into fairly and in good faith between competent parties, and is not procured by fraud or overreaching. St. Louis & S. F. R. R. Co. v. Chester, 138 Pac. Rep. 150; St. Louis & S. F. R. R. Co. v. Bruner, 152 Pac. Rep. 1103; Nath v. Oregon Ry. & Nav. Co., 131 Pac. Rep. 251; Borden v. Sandy River R. L. R. Co., 86 Atl. Rep. 242. Where a formal written release of liability for personal injuries is executed by a competent person in possession of all his faculties, and there exists between the releasor and releasee no fiduciary relation, and the circumstances are such that the releasee, or its representatives, occupied no position of advantage over the releasor, in order to accomplish the impeachment, as for fraud, of a release so executed, proof of the fraud should be clear, cogent, substantial and convincing. That some unconscionable advantage was taken of the releasor, either

through a defensible failure on his part to understand the
nature or extent of his injury; or through the situation or
relations of the parties; or through a justifiable lack of
mental appreciation of the nature or effect of the release;
or that the releasor did not in fact understand the instru-
ment to be a release; or that he did not agree to its terms,
but was induced to sign it through fraudulent representa-
tions, mental impairment or incapacity, or through over-
reaching or other fraudulent means, should be clearly, con-
vincingly and substantially established by a preponderance
of the evidence; otherwise the release should stand.   Spratt
v. Northern Pac. Ry. Co., 156 Pac. Rep. 653; Colorado
Springs Etc. R. Co. v. Huntling, 181 Pac. Rep. 129;
Reynolds v. Day, 161 Pac. Rep. 62.   As to the measure of
proof necessary to sustain a charge of fraud generally, see
Dova v. Hancock; Green v. First Natl. Bank; Glass v.
Craig, *supra*.   The rule in some jurisdictions requires such
proof to be clear, cogent, substantial and convincing "be-
yond reasonable controversy" (Bessey v. Minneapolis, St.
P. & S. S. M. Ry. Co., 141 N. W. Rep. 244; Kenese v.
Cudahy Bros., 167 N. W. Rep. 750) ; or "sufficient to con-
vince a reasonable man that fraud existed," (Frazier v.
Missouri Pac. Ry. Co., 154 Atl. Rep. 1022), or "clear,
precise, and indubitable" (Hicks v. Harbison-Walker Co.,
61 Atl. Rep. 958; D. & R. G. Ry. Co. v. Ptolemy, 169 Pac.
Rep. 541) ; or "clear, direct and satisfactory," (Hammond
v. N. Y. Etc. R. R. Co., 97 Atl. Rep. 1011). See also 23 C. J.
16 (1748).   If such releases, though made in writing and
signed by the releasor, are to be lightly set aside upon the
unsupported testimony of the releasor, uncorroborated by
the attending circumstances or by other evidence, there
would be little use in making them.   Valley v. Boston &
Maine Ry. Co., 68 Atl. Rep. 635.

We are aware that fraud is rarely susceptible of direct

and positive proof, but that does not dispense with the necessity of producing evidence that fraud existed. A charge of fraud can not be sustained by mere suspicion, conjecture, or doubtful circumstances. Fivey v. Pennsylvania Ry. Co., 52 Atl. Rep. 472. It is not enough to show that fraud *might* have been practiced. Evidence must be produced to show that fraud *was* practiced. That evidence need not be direct. It may be wholly circumstantial, or a combination of direct and circumstantial evidence. Miller v. Spokane Int. Ry. Co., 143 Pac. Rep. 981; Frazier v. Missouri Pac. Ry. Co., 154 Pac. Rep. 1022, In re: Everett, 68 S. E. Rep. 925. And a wide latitude is permitted in proving it. Armour v. Doig, 45 Fla. 162, 34 South. Rep. 249. But it is always incumbent upon the party asserting the fraud to establish the existence thereof by evidence measuring up to the rule above stated. See 27 C. J. 65 (200).

Where the parties to a written release of liability for personal injuries are competent to contract, and do so understandingly, and there is no other evidence of fraud or overreaching, mere inadequacy of the consideration for the release is not alone sufficient to establish fraud in the procurement thereof, but it is a circumstance to be considered upon the question of the existence *vel non* of fraud, and sometimes but little additional supporting evidence is necessary to establish fraud. Nelson v. Portland Gas & Coke Co., 147 Pac. Rep. 554. But the contracting parties, not the Courts, must fix the *quid pro quo*. Missouri Pac. R. R. Co. v. Goodholm, 60 Pac. Rep. 1066; Cleveland Etc. R. R. Co. v. Hilligoss, 86 N. E. Rep. 845; Allen v. Ruland, 65 Atl. Rep. 138; 34 Cyc 1053, and cases cited.

Whether or not fraud has been shown to exist in a given case, is, as a general rule, a question of fact for the jury. 23 R. C. L. 418 (49). But since honesty, not fraud, is pre-

sumed, neither courts nor juries may suppose the existence of fraud where the facts established by the manifest weight and probative force of the evidence may be fairly and reasonably reconciled with honesty and pure dealing. Although the positive testimony of one witness (the releasor), as to the existence of fraud, is sufficient to require the case to be submitted to the jury (Gordon v. Great A. & P. Co., 90 Atl. Rep. 78; Clayton v. Consolidated Traction Co., 54 Atl. Rep. 332), it does not necessarily follow that such testimony will be sufficient in all cases to sustain a finding of fraud. Bessey v. Minneapolis Etc. Ry. Co., 141 N. W. Rep. 244; Railroad Company v. Shay, 82 Pac. St. Rep. 198; DeDouglas v. Union Traction Co., 48 Atl. Rep. 262; Valley v. Boston & Maine R. Co., 68 Atl. Rep. 635, and other cases hereinafter cited. The considerations and legal principles that guide the judicial discretion in directing a verdict and in granting a new trial on the evidence are not the same. F. E. C. Ry. Co. v. Hayes, 66 Fla. 589; 64 South. Rep. 274, Gunn v. City of Jacksonville, 67 Fla. 40; 64 South. Rep. 435; Gravette v. Turner, 77 Fla. 311; 81 South. Rep. 476.

We have carefully read and considered all the evidence presented by this record, and guided by the principles of law already announced we have reached the conclusion that the evidence upon the question of fraud fails to meet the burden of proof resting upon the plaintiff in cases of this nature, and is therefore insufficient to sustain the jury's finding of fraud in the procurement of the release.

Though the plaintiff testified that he can neither read nor write except to read and write his name, his testimony indicates that he is otherwise a man of average intelligence. There is no evidence from which it could be found or lawfully inferred that plaintiff, releasor, at or about the time of the execution of the release was ignorant of his physical

condition or the extent of his injuries; or was suffering from illness, pain, shock, mental deficiency or impairment, the use of sedatives, anesthetics or other drugs; or that his faculties were otherwise impaired or obscured. The questioned settlement occurred about six weeks after his injury when plaintiff was sufficiently convalescent to leave the hospital in St. Augustine and return to his home in Key West unattended. There is no evidence of misrepresentation by the representatives of the releasee as to their identity or connection with the releasee. On the contrary, the releasor knew who they were. There is no evidence that the release was presented to the plaintiff folded or otherwise obscured. There is no evidence that the releasor was hurried in its execution or any effort made to hinder him in making a further investigation as to its contents and legal effect in circumstances and amongst persons of his own choosing. On the contrary, the evidence is undisputed that the last thing Mr. Colee, the claim agent, told plaintiff was: "Now, Mr. Thompson, if you don't want to sign this release at this time, we will send it down to you and you can think it over and have a chance to study about it and talk it over with your wife," to which the plaintiff replied: "No, I have been working with the railroad a good long time and I will be satisfied to get a job and my leg." It is undisputed that Mr. Colee termed the instrument at the time a "release," not a receipt. Neither does the fact that the release was executed in a hospital conducted by the releasee for the benefit of its employees, and in the presence of the Chief Surgeon and other representatives of the releasee, appear to have subjected the releasor to any disadvantage in this instance.

The fraud asserted by the releasor is not predicated upon any of the circumstances mentioned, or any other circumstances of a similar nature. Plaintiff's claim of fraud is

based solely on his asserted illiteracy and his inability to read or write, coupled with the further claim made in his testimony that the representatives of the releasee with whom he dealt in executing the release, and upon whose statements he caims to have relied, did not fairly and fully disclose to him the contents and legal effect of the instrument signed by him, but on the contrary represented to him that it was a receipt ''for wages and time that I (the plaintiff) had lost and for the benefit of my wife and little children;'' that his understanding from these representations was that the instrument was ''a receipt for $350 that Dr. Fogarty had told me (the plaintiff) to sign;'' that nothing whatever was said to him about a future job with the railway company; and that plaintiff did not authorize Dr. Fogarty to sign a release for him of all claims against the railroad.

Plaintiff's testimony in this respect stands alone. Opposing that testimony is not only the written release itself, but the testimony of three witnesses whose probity is unassailed, each of whom testifies positively that the release was read, paragraph by paragraph, and fully explained to the plaintiff in plain language before he signed it; they testified that they did not tell the plaintiff that he was signing a receipt for wages but on the contrary told him that the $350 was a flat sum paid to him for the loss of his limb; that he was to return to Key West, take his seniority and precedence over other cleaners, and was to be given a job running a stationary pump at $125.00 per month and a cork leg when the proper time came, that plaintiff accepted the sum of $350.00 after these explanations were made to him; that the release ''was read to him very slowly and very distinctly, so that no individual in the world could misunderstand it,'' and that plaintiff appeared to fully understand it, whereupon Dr. Fogarty, at plaintiff's

request, affixed plaintiff's name to the document, the plain-
tiff either making his mark or touching the pen as the mark
was made.  Plaintiff himself testified that "Mr. Colee (the
claim agent) read something to me, which I though was
a receipt for wages.  Dr. Fogarty and Mr. Colee and this
lady were there in the office.  I saw what he was reading.
He had it in his hand reading it.  This that you show me
(Defendant's Exhibit 'D,' the release in question) looks
like the same thing he was reading from.  The same kind
of paper."  One of the three witnesess last mentioned, at
the time her testimony was given, was no longer connected
with the defendant.  She was merely a spectator at the
execution of the release, and was doubtless the most dis-
interested witness who testified on the question of fraud.

A fourth witness, plaintiff's own brother-in-law, testi-
fied: "I know Mr. Tompson; he is my brother-in-law.  I
remember seeing him when he came back from the hospital.
He came in on 85 that morning; I saw him and again I
saw him that afternoon after I knocked off.  I had a con-
versation with him there.  I discussed with him whether
or not he had made a settlement with the railroad company.
He said he had made a settlement.  He said he had made a
settlement for a job and a leg and so much money.  He
said that the railroad had paid his wages.  That was on
the night he returned to Key West."  Though this testi-
mony strongly corroborates that of the defendant's wit-
nesses that the settlement was made with plaintiff in con-
sideration of the sum of $350.00 and a cork leg and a per-
manent job with the railroad company, the plaintiff did not
deny having made the statement attributed to him by his
brother-in-law, a circumstance which materially diminishes
the force of plaintiff's claim of fraud.  A fifth witness,
an employee of defendant, testified that he received orders

to put plaintiff back to work as soon as he applied for it, and that the order had never been rescinded.

The circumstances are inconsistent with plaintiff's testimony. Defendant did not owe him any wages, but if plaintiff genuinely thought the defendant was paying him his wages while he was in the hospital, the sum thereof would not have exceeded $210.00, yet plaintiff received and accepted $350.00. By plaintiff's own statement, he knew that part of said sum was ''for the benefit of your (plaintiff's) wife and children,'' and hence was not wages.

As against this array of testimony and circumstances, plaintiff's unsupported evidence falls short of the legal requirement for impeaching, as for fraud, a formal written release of liability of this nature. In probative force plaintiff's unsupported evidence is not sufficient. When fairly and impartially considered in connection with the opposing evidence, to constitute clear, cogent, convincing and substantial proof of fraud. The verdict is therefore against the manifest weight of the evidence, and affords just grounds for belief that the jury acted upon a consideration of matters which properly should not control them, which was not unlikely a solicitude and sympathy for one who did not seem to them to be fully compensated for his injury by the amount of money received.

Our view of the matter is amply supported by the following authorities; Columbus Elec. Power Co. v. Downs (Ala.), 106 South. Rep. 593; Bessy v. Minneapolis Etc., Ry. Co., 141 N. W. Rep. 244; Borden v. Sandy River Etc., Ry. Co., 88 Atl. Rep. 972; *idem,* 86 Atl. Rep. 242; Fivey v. Pennsylvania R. R. Co., 52 Atl. Rep. 472; Zdancewicz v. Burlington Traction Co., 71 Atl. Rep. 123; DeDouglas v. Union Traction Co., 48 Atl. 262; Railroad Company v. Shay, 82 Pa. St. 198; Denmark v. Milwaukee Elec. Ry. Co., 126 N. W. Rep. 13; Frazier v. Missouri Pac. Ry. Co., 154

Pac. Rep. 1022; Hicks v. Harbison Walker Co., 61 Atl. Rep. 958; Vellekoup v. D. Fullerton & Co., 74 Atl. Rep. 793; Wallace v. Skinner, 88 Pac. Rep. 221; Pope v. Bailey-Marsh Co., 151 N. W. Rep. 18; Hammond v. N. Y. Etc. R. R. Co., 97 Atl. Rep. 1011; Reynolds v. Day, 161 Pac. Rep. 62; Kense v. Cudahy Co., 167 N. W. Rep. 750; Valley v. Boston & Maine R. R. Co., 68 Atl. Rep. 635; Barrett v. Lewiston Etc. Ry. Co., 72 Atl. Rep. 308; *idem*, 85 Atl. Rep. 306; Spratt v. Northern Pac. Ry. Co., 156 Pac. Rep. 563; A. T. & S. F. Ry. Co. v. Smith, 190 S. W. Rep. 761; Treadway v. St. Louis Etc. Ry. Co., 191 S. W. Rep. 930; Davis v. H. P. Cummings Const. Co., 129 Atl. Rep. 729; Walsh v. Fore River Shipbuilding Co., 119 N. E. Rep. 680; Erickson v. Great Northern Ry. Co., 107 Pac. Rep. 365; Borden v. Sandy River R. R. Co. 86 Atl. Rep. 242; Rayborn v. Galena Iron Works Co., 149 N. E. Rep. 701.

Conflicts in evidence are for the jury to decide, but the legal effect of the evidence is a question of law, Bossom v. Gillman, 70 Fla. 310; 70 South. Rep. 364; Costello v. Hayes, 144 N. E. Rep. 368.

This Court is very reluctant to interfere with a verdict of the jury as to the facts. Its power to do so, as well as that of a trial Court, should be exercised cautiously and with discrimination, and only after a careful consideration of all the evidence in its most favorable aspect to the party in whose favor the verdict was rendered. Yet when the verdict is manifestly contrary to the evidence, of where the verdict is not supported by the evidence in the sense that there is legally not enough evidence to support the verdict under any reasonable view that may be taken of the evidence, or in the sense that the probative force of the evidence preponderates so strongly against the verdict as to afford just grounds to conclude that the jury acted upon considerations other than the evidence, or that the jury

did not give due consideration to the probative force of the evidence, then it is the imperative duty of this Court to set it aside and direct another trial. Sanderson v. Hogan, 7 Fla. 318; Schultz v. Pacific Ins. Co. 14 Fla. 73; F. E. C. Ry. Co. v. Hayes, 66 Fla. 589, 64 South. Rep. 274; Chambers v. Ammons, 78 Fla. 577; 83 South. Rep. 721; Wilson v. Jernigan, 57 Fla. 277; 49 South. Rep. 45.

As was said by this Court, speaking through Mr. Justice WESCOTT, in Schultz v. Pacific Ins. Co. *supra.* In exercising its power and duty to set aside a verdict and grant a new trial under the circumstances hereinabove mentioned, "the Court does not encroach upon the providence of the jury, for the reason that it does not conclusively settle facts in the form of a verdict, but only gives another jury the opportunity of doing so, and of correcting what appears to be a mistake. If this is not properly within the power of the Court, then the result is that the first twelve (six) men that happen to constitute a jury in a given case, are by law the final arbiters of the facts in that case. There is no such principle of law."

Defendant's motion for a new trial should have been granted upon the ground "that the verdict of the jury is contrary to the weight (and preponderance) of the evidence."

The judgment is therefore reversed and a new trial awarded.

ELLIS, C. J., AND WHITFIELD, TERRELL AND BUFORD, J. J., concur.

BROWN, J., disqualified.