STANDARD GROWERS EXCHANGE, *Plaintiff in Error,* v. B. A. HOWARD *et al., Defendants in Error.*

Opinion Filed July 5, 1921.

Petition for Rehearing Denied July 30, 1921.

1. In an action upon a contract for the sale of tomatoes a plea setting up the defense that the tomatoes were received by defendant and sold for the account of the plaintiff is an affirmative defense and the burden of proof is upon the defendant.

2. Where the evidence is conflicting upon any question material to the determination of a cause and there is substantial evidence to support the finding of the jury upon the question at issue, the finding of the jury will not be disturbed as to that point.

3. Where the plaintiff agreed to furnish to the defendant free on board the cars tomatoes free from certain defects, and the defendant sells the tomatoes after finding that they are not free 'from the defects warranted by the contract, the plaintiff may not in an action against the purchaser for the price of the tomatoes recover the contract price, but may under a common count for goods bargained and sold recover the value of the tomatoes.

4. Evidence examined and remittitur suggested.

A Writ of Error to the Circuit Court for Okeechobee County; E. B. Donnell, Judge.

*Davis & Giles,* for Plaintiff in Error;

*George A. DeCottes* and *John M. Murrell,* for Defendants in Error.

ELLIS, J.—B. A. Howard and L. A. Howard as copartners under the firm name of Pahokee Packing Company entered into a contract with F. C. Spadaro, who was acting for the Standard Growers Association, a corporation, whereby B. A. and L. A. Howard agreed to sell, and Spadaro agreed to buy, "forty" cars of tomatoes, averaging about one car per day, beginning April 25th, 1919, and ending about June 10th, 1919; the price agreed upon was two dollars and sixty cents per crate for fancy, and two·dollars and ten cents for choice tomatoes, "all F.O.B. Okeechobee City." The tomatoes were to be free from "nail rust, splits, ·watersoaked, ' and all tomatoes· to be green." Spadaro agreed upon his part to take the forty cars of tomatoes and pay for each car as soon .as loaded and billed. He advanced three· thousand dollars on the contract which was. to be deducted from· the. payment of

each car at the rate of one hundred dollars per car until the total advance was paid.

Thirty cars of tomatoes were delivered by the Howards on board the cars at Okeechobe and they drew drafts upon the defendant Standard. Growers Exchange for the price of each car, less one hundred dollars. Twenty-one of the drafts aggregating $20,319.20 were paid by the defendant, nine of them aggregating $9,075.30, were not honored, but payment was refused.

The Howards trading as the Pahokee Packing Company brought their action upon the contract against the Standard Growers' Exchange and F. C. Spadaro who acted for it in making the contract. The breach alleged is the refusal of the defendant to honor the drafts for the nine car loads of tomatoes delivered by the plaintiffs to the defendant at Okeechobee from May 29th to June 2nd, 1919, both inclusive, and the refusal to accept and pay for the remaining ten cars which it is alleged were tendered and offered by the plaintiff to the defendant "F. O. B. Okeechobee, Florida." The plaintiffs acknowledged the receipt of one thousand dollars on account of the nine drafts, reducing the claim on that account to $8,075.30. There was a second count for goods bargained and sold, and a third based upon a claim for interest on "divers sums of money," etc.

The defendant interposed seven pleas: First, never was indebted; second, that the nine cars of tomatoes delivered were not fancy and choice green tomatoes free from nail rust, splits and watersoaked, but averred that they were infected with nail head rust, splits and watersoaked and that they did not conform to the contract; third, that prior to the acceptance of the shipment of the nine cars, the defendant inspected the tomatoes and found them to be ripe

and infected with nail rust, splits and water soaked, and notified the plaintiff that it would not accept the tomatoes under the contract, but that it would handle them for the account of the plaintiffs on a commission or brokerage basis, which it was averred was done; fourth, that the plaintiff delivered twenty-one cars of tomatoes and the defendant paid the drafts therefor before the tomatoes arrived at their destination, that ten of the cars of tomatoes were not in quality in accordance with the terms of the contract, but were watersoaked, splits and infected with nail head rust, whereupon the defendant notified the plaintiffs of the condition of the tomatoes and sold them for their account, and that afterwards and before the plaintiffs made any further deliveries, the defendant refused to accept any further deliveries under the contract because of the defective condition of the tomatoes, and agreed with the plaintiff to handle all cars ''subsequent to twenty-one as brokers,'' receiving the usual commissions; that the plaintiffs then delivered the nine cars which were sold by the defendant under the brokerage agreement. It is averred that the eleven cars accepted, together with ten rejected at destination, and the nine accepted to be sold on a commission basis constituted all of the plaintiffs deliveries. That the eleven cars accepted brought more than the contract price, while the remaining ninteen brought less, and that on the 27th of June, 1919, the defendant paid to the plaintiffs all the net returns arising from the sale of ''said thirty cars of tomatoes'' less brokerage charges which sum amounting to $666.19 was accepted by the plaintiffs in full satisfaction of their claims; fifth, that all the tomatoes delivered by the plaintiffs with the exception of the first eleven cars were infected with nail head rust, splits and watersoaked; sixth, the plea denied that the plaintiffs tendered the ten additional cars of tomatoes as alleged,

VOL. 82, JUNE TERM, 1921.          101

Standard Growers Exchange v. Howard et al.—Opinion of Court.

and seventh, that the defendant paid off and discharged the plaintiffs' claim before the commencement of the action.

The plaintiffs joined issue upon the first, second, fifth, sixth and seventh pleas, and filed replications to the third and fourth. The replication to the third plea denied that the defendant prior to the acceptance of the shipment of the nine cars inspected the tomatoes and found them to be ripe and infected with nail rust, splits and watersoaked, but on the contrary the defendants' agent found the tomatoes upon inspection to conform to the specifications of the contract and accepted them. The replication denied the averment of the plea that the defendant and plaintiffs agreed that the nine cars of tomatoes should be handled by the defendants for the account of the plaintiffs on a commission basis. The replication to the fourth plea denied that ten car loads of the tomatoes of the twenty-one cars first shipped were infected with nail head rust, splits and watersoaked, but alleges that all of the twenty-one cars were duly inspected by the defendant's agent and all the said twenty-one cars conforming to the specifications of the contract were duly accepted by the defendant's agent and delivered to the defendant "F. O. B. Okeechobee." The replication denied that the defendant notified the plaintiffs that any of the said twenty-one cars of tomatoes did not conform to the specifications of the contract, and alleged that the defendant accepted the same and paid for them in accordance with the terms of the contract. It denied that there was any agreement between the plaintiffs and defendant that the latter should handle all cars subsequent to the first twenty-one as brokers on a commission basis, and denied that the nine cars shipped subsequently to the first twenty-one were delivered by the plaintiffs to the defendant to be handled on a commission basis, and alleged

that the defendant accepted all of the thirty cars of tomatoes under the terms of the contract to be paid for as therein agreed, and denied that the plaintiffs accepted the $666.19 in full satisfaction of their claim.

The defendant joined issue upon the plaintiffs' replication, and the cause went to trial, resulting in a verdict and judgment for the plaintiffs in the sum of eleven thousand, seven hundred and seventy-one dollars and eighty cents. A motion for a new trial was made by defendant and the same was overruled. The defendant seeks a reversal here upon writ of error.

The contract which is made a part of the declaration, provided that the seller, Pahokee Packing Company would sell forty cars of tomatoes which were to be green, free from nail head rust, splits and watersoaked; that it would deliver the tomatoes "F. O. B. Okeechobee City" at a price stipulated for certain grades. The sale was to be of one car of tomatoes per day, beginning about April 25th, 1919. The purchaser, Standard Growers Exchange, agreed to buy the forty cars of tomatoes at the prices named, and pay for each car as loaded and billed. That it would and did advance three thousand dollars on the purchase. That there was to be deducted from the price of each car the sum of one hundred dollars until the total advance of three thousand dollars was returned.

There is no provision in the contract that the purchaser should inspect the tomatoes and determine whether they came up to the specifications of the contract. The seller assumed the obligation to place the tomatoes on board the cars at Okeechobee City, and that the tomatoes should be green and free from the imperfections named.

The first plea was applicable to the second and third

counts of the declaration, but not as to the first count, be-
cause that was a special count resting upon the contract.
The second plea averred a breach of the contract by the
plaintiffs only as to the last nine cars of tomatoes placed
by them at Okeechobee City. The fifth plea averred a
breach of the contract by the plaintiffs as to the last ten
cars of tomatoes of the first twenty-one delivered and the
last nine cars, making a total of nineteen cars, averring that
the tomatoes contained in those cars were infected with
nail head rust, splits and watersoaked. The sixth plea
denied that the plaintiffs tendered any more tomatoes than
those contained in the thirty cars delivered, and the
seventh plea averred payment and satisfaction of the plain-
tiffs' claim.

The plaintiffs joined issue upon these pleas. The third
plea relates only to the last nine cars of tomatoes concern-
ing which it is averred that before ''acceptance of the ship-
ment'' the defendant inspected the tomatoes, found them
to be defective, and rejected them under the contract, but
agreed with the plaintiffs to handle them on a commission
basis. The plaintiffs' replication to this plea amounts
merely to a joinder of issue.

The issue presented by the third plea, the burden of
maintaining which was upon the defendant, because it was
an affirmative defense which admitting the acceptance of
the tomatoes averred that such acceptance was upon a
different contract than the one set out in the declaration,
was not supported by the defendant. The evidence upon
the point raised by the plea, namely, that the defendant
rejected the tomatoes at the point of delivery as not com-
ing up to the specifications of the contract, but agreed with
the plaintiffs to sell them for the plaintiffs' account on a
commission basis, is conflicting; but there is ample evidence

to support the conclusion that there was no rejection of the tomatoes by the defendant, nor agreement to sell them on a commission basis.    There was evidence to show that in fact no account sales of tomatoes sold were received by the plaintiffs from the defendant prior to the delivery of the last nine cars at Okeechobee City, nor declaration by the defendant that it would handle the cars only on a commission basis.

The fourth plea which seems to be very much involved, undertakes to set up the defense that twenty-one of the cars of tomatoes were paid for by the defendant, but that as ten of the cars contained tomatoes which were defective and not of a quality specified in the contract, the defendant sold them for the plaintiffs' account after notifying them of the condition of the tomatoes and refused to accept any more under the contract, and agreed with the plaintiffs to handle all subsequent shipments as brokers. And that acting on this agreement the defendant sometime in June, 1919, two weeks after the last car of tomatoes was to have been delivered by the plaintiffs to the defendant at Okeechobee, the defendant rendered account sales to the plaintiffs of the entire shipment of thirty cars and paid to the plaintiffs the amount appearing to be due, which amount was accepted in full satisfaction of all demands.    The replication to this plea while admitting receipt of the account sales for thirty cars of tomatoes delivered at Okeechobee City, denied that the sum of money paid by defendant was in satisfaction of the plaintiffs' demands and denied that there was any agreement between the parties to handle the tomatoes, or any of them on a commission basis.

We think that the issues under this plea, so far as they can be ascertained, were not supported by the defendant

upon whom the burden rested to prove that defense. Certainly the evidence was quite sufficient to sustain the conclusion at which the jury seemed to have arrived that the payment to the plaintiffs by the defendant of the sum of $666.19 was not in satisfaction and discharge of the plaintiffs claim, and that there had been no agreement between the parties that the tomatoes were to be handled by the defendant on a commission basis. At least that the evidence was not sufficient to establish the fact.

The issues presented a good defense to a recovery by the plaintiffs on the contract, and the evidence supported the pleas. It was in fact uncontradicted. The tomatoes when sold or carried to the market for sale by the defendant showed the existence of the defects averred in the plea to exist, and as the plaintiff agreed to deliver tomatoes free from such defects, they cannot recover the contract price. There was a common count, however, for goods bargained and sold upon which the plaintiffs could recover on a *quantum valebant* for the value of the tomatoes, and as the defendant's own evidence, which is not contradicted, shows that it received something of value for the tomatoes, the plaintiffs should have recovered as much as the tomatoes were worth.

There was no evidence to support the claim for the remaining ten cars of the forty to be delivered under the contract. The plaintiffs had received notice after the shipment of the thirty cars that the defendant would receive no more, and as there was evidence to show that the plaintiffs' tomatoes were as to the last shipment at least, affected by the imperfections named in the contract, there could be no delivery under the contract. We think the verdict is excessive, and if the plaintiff below, B. A. and L. A. Howard, will enter a remittitur of six thousand, seven

hundred dollars and interest on that amount since the rendition of the judgment, within thirty days, the judgment will be affirmed; otherwise it. will be, and is hereby reversed.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND WEST, J. J., concur.